Matthew M. HENDRICK, Plaintiff,

v.

AVIS RENT A CAR SYSTEM, INC.; General Motors Corporation; and New United Motor Manufacturing, Inc., Defendants,

AVIS RENT A CAR SYSTEM, INC., Defendant & Third–Party Plaintiff,

v.

Andrea E. MacMILLAN, Third–Party Defendant.

No. 93–CV–6450T.

United States District Court, W.D. New York.

Feb. 29, 1996.

Thomas R. Monks, Rochester, NY, Kevin S. Hannon, The Law Firm of Kevin S. Hannon, Denver, CO, Kieron F. Quinn, Towson, MD, for plaintiff Matthew M. Hendrick.

Henry R. Ippolito, Chamberlain, D'Amanda, Oppenheimer & Greenfield, Rochester, NY, for defendant Avis Rent A Car System, Inc.

Debra Martin, Martin & Iati, Rochester, NY, for Andrea E. MacMillan, third-party defendant.

Neil A. Goldberg, Saperston & Day, P.C., Buffalo, NY, for defendants General Motors Corp. and New United Motor Mfg. Inc.

## DECISION AND ORDER

FELDMAN, United States Magistrate Judge.

On the afternoon of October 19, 1991 plaintiff, Matthew Hendrick was a passenger in a rented Geo Prizm automobile being driven by his mother along Route 96 in Romulus, New York. For reasons not certain, the vehicle left the road and collided with a utility pole. Matthew Hendrick, then age 21, was rendered a quadriplegic as a result of the collision. Plaintiff thereafter commenced this action against defendants alleging, *inter alia,* that design defects existed in the restraint system utilized by the Geo Prizm. Defendants General Motors (GM) and New United Motor Manufacturing, Inc. (NUMMI) have denied any defect existed in the Geo Prizm or its design.[1]

By Order entered November 15, 1995, this matter was referred to the undersigned by the Honorable Michael A. Telesca for determination of any non-dispositive motions. Currently pending before me are (1) GM's motion to compel plaintiff to answer their interrogatory number 23 which seeks production of all statements of GM employees, officers and agents and (2) plaintiff's motion for access to any "crash or sled testing" that GM may conduct to prepare for trial.

### INTERROGATORY 23: STATEMENTS OF GM

In interrogatory 23 defendant GM seeks the identification and production of any statement of any employee, agent or officer of General Motors or NUMMI currently in the possession or control of plaintiff or his attorneys. Plaintiff has responded to this demand by admitting that counsel for plaintiff has obtained and examined a limited number of documents and transcripts from other cases involving GM, but refusing to identify or provide the documents obtained on the basis that such documents constitute attorney work product. In reply, GM counters that statements of their agents, employees and officers are discoverable as a matter of right pursuant to Federal Rule of Civil Procedure 26(b)(3).

In order to qualify as work product, the "material must (1) be a document or other tangible thing, (2) that was prepared in anticipation of litigation and (3) was prepared by or for another party, or by or for that party's representative." *Brock v. Frank V. Panzarino.,* 109 F.R.D. 157, 159 (E.D.N.Y. 1986) (quoting *In re Grand Jury Subpoenas Dated December 18, 1981 and January 4, 1982,* 561 F.Supp. 1247, 1257 (E.D.N.Y.1982). Because the materials which plaintiff objects to revealing to defendants were not prepared by or on behalf of plaintiff, I find that such documents do not constitute "work product" and therefore must be produced in response to interrogatory 23.

The sharing and exchanging of documents obtained from a party during litigation with other counsel who may have cases with the same defendants and similar issues is, of course, not uncommon. In this computer age it is relatively easy for a litigant to conduct a nationwide search to locate other cases where the issues and often many of the parties are identical to the case of the inquiring litigant. In the specialized field of products liability, resourceful counsel representing injured plaintiffs have established formal and informal information networks to advance the sharing of materials that may be of common interest, including pleadings, witness statements, interrogatory responses, trial transcripts and deposition testimony.

The sharing of information among similarly situated plaintiffs does not, however, shield the information exchanged from disclosure pursuant to the discovery provisions of the Federal Rules of Civil Procedure. In *Bohannon v. Honda Motor Company,* 127 F.R.D. 536 (D.Kan.1989), arguments similar to those plaintiff now makes were rejected by the court. The

---

1. The Geo Prizm is a joint venture vehicle assembled, in part, by NUMMI and marketed by General Motors.

plaintiff in *Bohannon* was injured in an accident involving a Honda ATV vehicle and his counsel thereafter obtained documents relevant to alleged defects in the vehicle from an "ATV litigation support group". Finding that "neither plaintiff nor his attorney generated these documents", the court denied protection under the work product doctrine despite plaintiff's claims that production of the material would "disclose the mental processes of counsel". *Id.* at 539. Similarly, in *Bartley v. Isuzu Motors*, 158 F.R.D. 165 (D.Colo.1994), plaintiff's counsel secured various documents that were generated in other cases involving the same defendants. Invoking the work product doctrine, plaintiff's counsel resisted disclosing the materials. The court in *Bartley* held that because the documents sought "were not prepared in anticipation of this particular litigation", they were not subject to the work product doctrine. *Id.* at 167.[2] I find the reasoning of the *Bohannon* and *Bartley* decisions to be sound and equally applicable to the facts presented here. Since plaintiff's counsel neither prepared nor created any of the documents sought and because it is undisputed that all of the documents responsive to interrogatory 23 were prepared in connection with other litigation, such documents are not subject to the protections of the work product doctrine.

■ A second, equally compelling, reason for ordering disclosure of the documents is that they are discoverable "statements" as defined in the second paragraph of Federal Rule of Civil Procedure 26(b)(3). Rule 26(b)(3) provides that "[a] party may claim without the required showing [of substantial need] a *statement concerning the action or its subject matter previously made by that party.*" (emphasis added). Given the broad language of the Rule, it seems logical that if plaintiff has obtained statements of or authored by GM, its agents, employees or officers concerning the subject matter of this lawsuit, such statements must be produced to defendant regardless of how plaintiff obtained them. *Bohannon, supra* at 540. (testimony of defendants in prior relevant cases are discoverable as "statements" within meaning of Rule 26(b)(3)).

Plaintiff's contention that the mere identification of documents reviewed would reveal his lawyer's litigation strategy is unpersuasive. Relying primarily on *Sporck v. Peil,* 759 F.2d 312 (3rd Cir.), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985), plaintiff complains that to respond to the interrogatory, counsel would, in effect, be divulging his "strategy and mental thoughts and impressions". (November 9, 1995 affidavit of Thomas R. Monks, Esq. at ¶ 34). I disagree. Plaintiff's "strategy" of identifying similar lawsuits involving GM and obtaining documents relevant to the issues raised in this action is hardly a secret. Plaintiff is not being required to reveal to GM a precise list of every document counsel examined or obtained from other lawyers who prosecuted similar claims against GM. Nor is counsel being required to disclose who obtained a particular document, how the document was obtained, why the document was obtained or when the document was obtained. Plaintiff is only being asked to identify statements made by or attributable to an adverse party. Moreover, the Second Circuit has voiced caution over extending the work product doctrine to the sifting and selection of documents scenario, admonishing counsel that this extension "depends on the existence of a real, rather than speculative concern that the thought processes of ... counsel in relation to pending or anticipated litigation would be exposed." *Gould, Inc. v. Mitsui Mining & Smelting Co.,* 825 F.2d 676, 680 (2d Cir.1987). *See also In re Minebea Co., Ltd,* 143 F.R.D. 494, 500 (S.D.N.Y.1992). In the absence of anything more specific than counsel's statement that his "strategy and mental thoughts" would be revealed by producing the defendant's own statements, I am not persuaded that work product doctrine provides relief from answering the disputed interrogatory.

For the foregoing reasons, plaintiff is hereby ordered to respond to interrogatory 23.

---

2. To the extent the documents contained the notes of counsel, the *Bartley* court distinguished *Bohannon* and afforded work product protection to the notes. *Bartley, supra* at 167. No claim is made by plaintiff here that the documents sought contain the notes of plaintiff's counsel.

Plaintiff may comply with this interrogatory by providing to GM a list identifying each document that would be responsive to interrogatory 23. To the extent GM claims that it does not have copies of particular materials identified on the list, plaintiff shall produce such documents and allow defendants to copy them at GM's expense.

 There remains the issue of the timing of disclosure. GM wants the documents produced immediately. Plaintiff argues that if disclosure is required, such disclosure should not occur until after depositions have been completed. This Court has the discretion, under Rule 26(c)(2), to delay production of the prior statements of a witness until after the witness has been deposed. The justification for any delay is that pre-deposition disclosure may afford the witness an unfair opportunity to tailor deposition testimony to conform with a previous explanation or statement, thus depriving the plaintiff from obtaining an unrefreshed recollection of the subject matter of the deposition. *See Torres–Paulett v. Tradition Mariner, Inc.*, 157 F.R.D. 487, 488–489 (S.D.Cal.1994); *McCoy v. General Motors Corp.*, 33 F.R.D. 354, 356 (W.D.Pa.1963). Under the facts presented here, I choose to exercise my discretion and delay disclosure of the documents until after the author of the statement or document has been deposed. Accordingly, to the extent plaintiff has either noticed the deposition, or has a good faith intention of noticing the deposition of an individual whose statement would otherwise be producible in answering defendants' interrogatory 23, such statement shall be produced or identified with particularity immediately following such individual's deposition. All other statements of defendants encompassed by a complete response to interrogatory 23 shall be identified or produced by plaintiff within 30 days.

### ACCESS TO CRASH OR SLED TESTING

In their moving papers, plaintiff seeks "access to any crash and sled testing that GM intends to perform in this case pursuant to Federal Rule of Civil Procedure 26(b)(3)".

(Affidavit of Thomas R. Monks, sworn to on September 20, 1995 at ¶ 29). In citing Rule 26(b)(3), plaintiff apparently concedes that any such testing performed by GM would constitute "trial preparation materials" within the meaning of the rule and, accordingly, would not be subject to disclosure unless plaintiff demonstrates a "substantial need of the materials in the preparation of [plaintiff's] case and that [plaintiff] is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3). Defendant GM has responded to plaintiff's demand by denying that any crash or sled testing has occurred or is presently scheduled, but maintaining that even if such testing is scheduled in the future, plaintiff has not met the "substantial need" or "undue hardship" requirements of Rule 26(b)(3). (Affidavit of Neil A. Goldberg, sworn to on November 1, 1995 at ¶ 20).

 The issues as to whether crash or sled testing results would (1) be relevant to the subject matter in this litigation and (2) would constitute work product material are not disputed by the parties and therefore need not be addressed herein.[3] The only issue this Court is asked to determine is whether plaintiff has demonstrated a substantial need to attend any testing procedures in order to prepare its case and is unable to obtain its equivalent by other means without undue hardship. The burden is squarely on plaintiff to meet both prongs of this test. *Toledo Edison Co. v. GA Technologies Inc.*, 847 F.2d 335, 340 (6th Cir. 1988); *P & B Marina Ltd. Partnership v. Logrande*, 136 F.R.D. 50, 57 (E.D.N.Y.1991) *aff'd without opinion* 983 F.2d 1047 (2d Cir. 1992).

 Based upon the record before me, I find that plaintiff has not demonstrated substantial need or undue hardship as required by Rule 26(b)(3). In support of his request for unlimited access to crash testing, plaintiff's counsel avers, in a most conclusory fashion, that plaintiff has neither the financial resources or the facilities to "conduct the same elaborate testing that can be performed

**3.** Application of Rule 26(b)(3) to disputed material would ordinarily require the court to engage in specific sequential steps, with shifting burdens of proof, to determine whether disclosure was required. *See Toledo Edison v. GA Technologies, Inc.*, 847 F.2d 335 (6th Cir.1988).

by these defendants". (September 20, 1995 affidavit of Thomas R. Monks, Esq. at ¶ 29). Plaintiff fails to delineate what efforts, if any, have been made to have an independent expert conduct crash or sled testing, what the cost of such testing would be, what the financial resources of the plaintiff are and whether similar testing results conducted by other experts in cases involving the same or a similar product are currently available to plaintiff. Although expense is a factor that the court may consider in determining "undue hardship", *In re International Systems & Controls Corp.*, 693 F.2d 1235, 1241 (5th Cir.1982); *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1467 (11th Cir.1984), facts supporting an undue hardship finding are lacking here. Moreover, plaintiff's moving papers are devoid of any allegation that his representatives need to be present for all future crash or sled testing to prepare their own case, an element that would seem to be explicitly required for successful invocation of the work product disclosure benefits of Rule 26(b)(3).

■ The fact that plaintiff would find it useful for his representatives to be present for all crash and sled testing that GM may perform in preparing for trial does not demonstrate substantial need or undue hardship. The work product doctrine was developed to "discourage counsel for one side from taking advantage of the trial preparation undertaken by opposing counsel, and thus both to protect the morale of the [legal] profession and to encourage both sides to a dispute to conduct thorough, independent investigations in preparation for trial." *United States v. 22.80 Acres of Land*, 107 F.R.D. 20, 24 ((N.D.Cal.1985) *citing Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Having conceded that access to GM's crash testing would be an invasion of GM's work product, plaintiff must do more than he has done here to meet the substantial need or undue hardship requirements of Rule 26(b)(3). *Donohoe v. American Isuzu Motors, Inc.*, 157 F.R.D. 238, 246 (M.D.Pa.

1994) (simply alleging that attendance at crash testing is necessary to effectively cross examine defendant's experts is "hardly the showing of substantial need and absence of alternative means for obtaining information required by Fed.R.Civ.P. 26(b)(3)".). *See Poulin ·v. Greer*, 18 F.3d 979, 985–986 (1st Cir.1994) (affirming district court's denial of pretrial discovery of photographs taken by defense consultant during reenactment of automobile accident for failure of plaintiff to demonstrate substantial need.).[4]

Plaintiff and GM jointly refer to the Second Circuit's decision in *Fortunato v. Ford Motor Company*, 464 F.2d 962 (2d Cir.), *cert. denied*, 409 U.S. 1038, 93 S.Ct. 517, 34 L.Ed.2d 487 (1972) as supporting their positions with respect to the crash and sled testing issue. Both sides focus their attention on a single sentence found in the *Fortunato* case: "Test results should not even be *admissible as evidence*, unless made by a qualified, independent expert or unless the opposing party has the opportunity to participate in the test". *Fortunato, supra* at 966. (emphasis supplied). Reliance on *Fortunato* by either GM or plaintiff is misplaced. At issue in *Fortunato* was not the discovery of crash testing, but the distinctly different evidentiary issue of the admissibility at trial of crash test results. The lesson of *Fortunato*, albeit perhaps in *dictum*, is that litigants proceed at their own risk if intending on *offering into evidence* the results of crash or sled testing, either as direct evidence or as a basis for any expert opinion, without permitting the opposing party the opportunity to attend and view the testing procedure. *See also Hall v. General Motors Corp.*, 647 F.2d 175, 181 (D.C.Cir.1980) (no error in trial court's decision to exclude results of "eleventh hour" crash test conducted without the presence of plaintiff's representatives). The issue of admissibility, however, is not before this Court. Since neither side has apparently yet engaged in or scheduled crash or sled testing, to the extent the issue does arise, it

---

**4.** Attached as an exhibit to plaintiff's motion papers are a number of orders signed by state court judges that apparently permit representatives of similarly situated plaintiffs to attend crash or sled testing conducted by defendants. The state court decisions obviously do not construe ·or apply federal law, nor do any of them contain any rationale or legal analysis upon which their holdings were based.

is one best left for the trial judge to resolve at the time of trial.

### CONCLUSION

Plaintiff shall respond to interrogatory number 23. The timing of such disclosure shall be in accordance with the provisions of this Decision and Order. Plaintiff's demand to be present at any crash or sled testing conducted by GM is denied.

**SO ORDERED.**