FEDERAL ELECTION COMMISSION,
Plaintiff,

v.

THE CHRISTIAN COALITION,
Defendant,

and

THE CHRISTIAN BROADCASTING
NETWORK, INC., Intervenor.

No. 2:98CV128.

United States District Court,
E.D. Virginia,
Norfolk Division.

April 10, 1998.

Stephen E. Hershkowitz, Lawrence M. Noble, Erin Kathleen Monaghan, Richard B. Bader, Robert W. Bonham III, Holly J. Baker, Federal Election Commission, Washington, DC, for Federal Election Commission.

Frank M. Northam, Alan P. Dye, Webster, Chamberlain & Bean, Washington, DC, David Neil Ventker, Huff, Poole & Mahoney, P.C., Virginia Beach, VA, James Bopp, Jr., Bopp, Coleson & Bostrom, Terre Haute, IN, for Christian Coalition.

Joseph William Koegel, Jr., Steptoe & Johnson, Washington, DC, for The Christian Broadcasting Network, Inc.

## OPINION AND ORDER

FRIEDMAN, District Judge.

This matter is before the Court for review of Magistrate Judge Tommy Miller's January 20, 1998, Order and Opinion requiring the Christian Broadcasting Network (CBN) to respond to the Federal Election Commission's (FEC) subpoena *duces tecum* by producing certain documents for which the CBN asserts a privilege, as well as for consideration of the CBN's Motion for Leave to File Declaration Under Seal and In Camera. The underlying litigation is pending in Washington, D.C. before the Honorable Joyce Hens Green, *FEC v. The Christian Coalition,* Civil Action No. 96cv1781 (D.D.C.), under the Federal Election Campaign Act (FECA), 2 U.S.C. §§ 431 *et seq.*

*Factual and Procedural Background*

In 1986, the CBN was the subject of an audit by the Internal Revenue Service (IRS). As part of the CBN's preparation for the audit, the CBN hired the Norfolk Office of Coopers and Lybrand (Coopers), an accounting firm. When the FEC filed the underlying enforcement action against The Christian Coalition (TCC) in July 1997, TCC asserted defenses that, among other things, implicated its dealings with the CBN. *See* TCC Answer in D.C. Litigation attached to the CBN's Objections to Magistrate's Order as Exhibit 3. On July 30, 1996, based on TCC's asserted defense, and to substantiate its claims against TCC generally, the FEC issued a subpoena *duces tecum* to the Norfolk office of Coopers for all documents "which in any way relate or refer to [TCC] from 1989 to the present." *See* Subpoena to Custodian of Records for Coopers and Lybrand (dated May 23, 1997), attached as Exhibit 3 to FEC's Motion to Compel (Oct. 8, 1997). After some objection, Coopers produced numerous documents and provided a privileged index for ninety documents for which it claimed either the attorney client or the attorney work product privilege, or both.[1]

On October 8, 1997, the FEC filed a motion to compel compliance with the subpoena. On November 26, Judge Miller held that the CBN's intervention in this action gave it standing to resist the FEC's motion to compel. Judge Miller found that under *National Union Fire Ins. Co. of Pittsburgh, PA v. Murray Sheet Metal Co., Inc.,* 967 F.2d 980, 985 (4th Cir.1992), the record was insufficient for him to determine the privileged status of the documents[2] and ordered Coopers to submit under seal by December 4, 1997, "all documents responsive to the FEC's subpoena

---

1. The attorney client and attorney work product privileges were asserted based on Coopers' involvement with the CBN in preparation for the IRS litigation referenced above. The Court notes that the dispute between the CBN and the IRS was recently settled. *See* FEC's Notice of Filing (April 6, 1998) (referencing an agreement between the CBN and the IRS regarding the IRS's audit of CBN). This Court finds that whether the IRS agreed to settle its dispute with the CBN is immaterial to this Court's analysis of the asserted privileges. *See, e.g., Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 487 F.2d 480, 483–84 (4th Cir.1973) (finding that termination of litiga-

tion did not end protection of attorney work product privilege).

2. Judge Miller found as a matter of law that the he could not determine from the privilege log and record before him whether the asserted privileged documents were attorney client, or opinion or non-opinion work product documents. *See* Order at 9 (Nov. 26, 1997). As a result, the Court stated that it "must have each document before it in order to determine what privilege, if any, is applicable to the document." *See* Order at 10 (Nov. 26, 1997).

for which the CBN claims the protection of the attorney-client privilege and/or Fed. R.Civ.P. 26(b)(3)'s work product doctrine" for an *in camera* inspection. *See* Order at 10 (Nov. 26, 1997). No objections were filed regarding Judge Miller's November 26, 1997, Order. On December 8, the CBN moved for leave to file an *ex parte* declaration by the former managing partner in Coopers, Mr. Halliday, to explain the documents listed on the privilege log. *See* Motion by TCC for Leave to File Declaration Under Seal and In Camera (Dec. 8, 1998). The Court allowed the CBN to submit the *ex parte* explanatory declaration over FEC's objection. Order (Dec. 11, 1997). Judge Miller's Order explained that the declaration must include "a list of those persons to whom each document has been disclosed, as well as a list identifying by name, job title and affiliation those persons identified on the privileged log." *Id.*

On January 20, 1998, Judge Miller issued a sixty-nine page Opinion and Order on FEC's Motion to Compel. Judge Miller found that many of the documents listed on the CBN's privileged log (or portions of the documents) were protected under the attorney client or opinion work product privilege. *See* Order at 67 (Jan. 20, 1998) [hereinafter Jan. 1998 Order]. The Court ordered the CBN to produce the non-opinion documents, or portions thereof, based on his decision under Fed.R.Civ.P. 26(b)(3) that the FEC had a "substantial need" for the documents and could not obtain the information elsewhere. *See* Jan. 1998 Order at 60–67.

On February 6, the CBN filed objections to Judge Miller's Jan. 1998 Order. The FEC filed timely responses, but did not file separate objections to the parts of the ruling where Judge Miller found documents protected. After a telephone conference with counsel on February 6, Judge Miller stayed his ruling pending review at the District Court level. *See* Order (Feb. 6, 1998). On February 17, the CBN filed a motion for leave to file a supplemental *ex parte* declaration to be reviewed *in camera* regarding its claim of attorney client privilege. The FEC

objected to the CBN's motion for the same general reasons it objected to the CBN filing the December 1997 *ex parte* Halliday Declaration under seal. On February 17, 1998, based on the parties' stipulation, Judge Green issued an order dismissing the previously asserted *FEC v. Massachusetts Citizens for Life (MCFL)*, 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986), defense and the counterclaim asserted by TCC. *See* Ex. 1 to CBN's Reply Mem.

### *The Standard of Review*

■ Fed.R.Civ.P. 72(a) authorizes magistrate judges to enter final orders on nondispositive pretrial matters. Rule 72(a) also sets forth the procedure a party must follow to object to a nondispositive pretrial order issued by a Magistrate Judge. Specifically, a party must file written objections within ten days of entry of the order.[3] If a party files timely objections to a nondispositive order, then the District Court reviews the order under a "clearly erroneous or contrary to law" standard. *See* Fed.R.Civ.P. 72(a); Magistrate Act, 28 U.S.C. § 636(b)(1)(A) (providing for District Court review of pretrial decisions made by a magistrate "where it is shown that the magistrate judge's order is clearly erroneous or contrary to law"). Courts have consistently found discovery motions to be nondispositive within the meaning of Fed.R.Civ.P. 72(a). *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir.1990) ("[m]atters concerning discovery generally are considered nondispositive of the litigation.") (citations omitted), *cert. denied*, 498 U.S. 846, 111 S.Ct. 132, 112 L.Ed.2d 100 (1990); *see also Merritt v. Intn'l Brotherhood of Boilermakers*, 649 F.2d 1013, 1018 (5th Cir.1981) (finding that decisions concerning discovery are by definition pretrial matters). Rule 72(a) provides that any portion of the order that is determined "clearly erroneous or contrary to law" should be modified or set aside. *Id.* Fed.R.Civ.P. 72(a). There being no evidence in this case that the discovery order at issue is disposi-

---

**3.** Rule 72(a) additionally provides that failure to serve timely objections waives the right to do so in the future. *See also United States v. Schronce*, 727 F.2d 91, 94 (4th Cir.1984), *cert. denied* 467

U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984) (finding that without enforcement of waiver rule, litigant might bypass district court review).

tive, this Court will review Judge Miller's challenged decision under the deferential "clearly erroneous or contrary to law" standard.[4]

The Fourth Circuit has held that the "clearly erroneous" standard is deferential and that findings of fact should be affirmed unless the reviewing court's view of the entire record leaves the Court with "the definite and firm conviction that a mistake has been committed." *Harman v. Levin*, 772 F.2d 1150, 1153 (4th Cir.1985) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Moore's Federal Practice states that, for the purpose of a review under the clearly erroneous standard, "a mistake has been committed if the factual finding seems 'so improbable,' as to belie belief, or is 'incredible on the admitted facts,' or is 'inconceivable,' or is 'internally inconsistent.'" *See* Moores Federal Practice 3d at § 206.03[2] (citations omitted).

The degree of detail this Court should provide to the factual determinations made by Judge Miller in the January 1998 decision is of particular importance to this Court due to the sensitive nature the controversy—whether either the attorney client or work product privilege applies. This Court must determine whether Judge Miller "clearly erred by mistakenly applying the incorrect legal rule to the discovery dispute." *See American Dental Ass'n Health Foundation v. Bisco, Inc.*, 1992 WL 107299 (N.D.Ill.1992) (upholding magistrate's ruling and noting that magistrate had already conducted lengthy *in camera* review). A review of at least some of the objections made by the CBN will require this Court, like the Magistrate Judge, to review the particular documents *in camera*. The Court is cognizant of the sensitive nature of the documents, and respects the sanctity of the asserted privilege. Therefore, the Court will only obtain from the clerk's office and review those documents where specific objections were made and it is determined that a review of the

actual document is necessary. Since most of the CBN's objections do not challenge decisions on specific documents, the majority of the documents will remain under seal.

### The CBN's Objections

The CBN makes several arguments regarding Judge Miller's Jan. 1998 Order. A common denominator of the CBN's objections is what it deems as Judge Miller improperly relieving the FEC of its burden of proof, or somehow over stepping the boundaries of a court reviewing documents *in camera* for privilege. The only factually specific objections the CBN makes are to six particular documents that Judge Miller determined were either totally or partially non-opinion work product. The Court will address each of the CBN's objections in turn below.

### I. The Asserted Attorney Client Documents

The CBN claims that since the FEC did not specifically argue in its Memorandum in Support of Motion to Compel that the CBN had wrongly invoked the attorney client privilege, Judge Miller should not have undertaken an unsolicited review of the asserted attorney client documents. The CBN alleges that absent a specific request from FEC, the Judge's review was impermissible, and should be reversed. In that same vein, the CBN also claims that it was without notice of the Judge's decision to review the documents, and did not have an opportunity to address the merits of the asserted privilege. As a result, the CBN claims that Judge Miller's decision violated its Due Process rights. Finally, if this Court does not reverse Judge Miller's decision to review the attorney client documents, the CBN requests permission from this Court to file an additional *ex parte* declaration under seal for *in camera* review in order so that it might explain its assertion of the attorney client privilege.

---

**4.** The CBN briefly addresses the standard of review and suggests that since the question is mixed fact and law the Court review this matter *de novo*. *See* CBN Objections at 6 (citing *Sandberg v. Virginia Bankshares, Inc.*, 979 F.2d 332, 350 (4th Cir.1992)) (*vacated by* 1993 WL 524680 (4th Cir.1993)). Significantly, Rule 72(b) provides for *de novo* review only for dispositive orders issued by Magistrates.

A. *Whether the Magistrate Should Have Reviewed the Attorney Client Documents*

In his Jan. 1998 Order, Judge Miller acknowledged that the FEC's memorandum did not include argument specifically related to the attorney client documents. *See* Jan. 1998 Order at 14–15. Nonetheless, based on the Court's "ultimate responsibility to enforce the subpoena," which sought *inter alia* attorney client documents, the Court reviewed each of the ninety documents submitted *in camera.* Jan. 1998 Order at 11–12, 15–17. Judge Miller determined that *United States v. Zolin,* 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989), was inapplicable to the FEC's request and the facts in this case. *See* Jan. 1998 Order at 15. Instead, he found that he not only had discretion to conduct the challenged *in camera* review, but that in a subpoena enforcement action he had a duty to review the asserted attorney client documents to determine if the CBN had met its burden of proving the asserted privilege. *See* Jan. 1998 Order at 17 (relying in part on *United States v. Aramony,* 88 F.3d 1369, 1389 (4th Cir.1996) (finding that party asserting privilege has burden to prove that privilege applies and has not been waived), *cert. denied* — U.S. ——, 117 S.Ct. 1842, 137 L.Ed.2d 1046 (1997)).

In *Zolin,* the Supreme Court held that a party seeking to compel the production of asserted attorney client documents under the crime fraud exception must satisfy the court with some showing prior to a judicial *in camera* inspection. 491 U.S. at 572, 109 S.Ct. at 2630–31. Judge Miller properly distinguished the facts in *Zolin* as a case that involved a party seeking to invoke the crime fraud exception, where there is a stricter pleading and proof standard under Federal Rules. *See* Jan. 1998 Order at 16–17.

The CBN argues that Judge Miller's decision was in error and that *Zolin* is not limited to instances where crime fraud is alleged. Rather, the CBN cites to *Zolin* for the proposition that a court's authority to conduct *in camera* review is always limited due to the sanctity of the attorney client relationship and due process considerations. Under the CBN's analysis of *Zolin,* prior to the court conducting an *in camera* review in any instance, the party requesting the document must make a threshold *prima facie* showing that the privilege is inapplicable. Aside from its interpretation of *Zolin,* the CBN does not cite any case law holding that a reviewing court is prohibited from reviewing privileged documents in a subpoena enforcement action, absent a specific request to do so.[5] Based on its position that *Zolin* applies to the facts in this case, the CBN asks this Court to reverse Judge Miller's determination with regard to documents he found unprotected by the attorney client privilege.

■ The Supreme Court in *Zolin* did not directly address whether a court should review all claims of privilege, or just those documents specifically opposed by the requesting party. However, the Court noted that courts are generally thought to have broad discretion to determine whether a privilege is properly asserted. *Zolin,* 491 U.S. at 569–70, 109 S.Ct. at 2629–30 ("This Court has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for *in camera* inspection ... and the practice is well established in federal courts.") (citing *Kerr v. U.S. Dist. Ct. for the Northern Dist. of Cal.,* 426 U.S. 394, 404–405, 96 S.Ct. 2119, 2124–25, 48 L.Ed.2d 725 (1976)) (other citations omitted). *Zolin* involved allegations that the party's attorney was committing a crime and using the attorney client privilege to cover-up his involvement in the crime. *See Zolin,* 491 U.S. at 572, 109 S.Ct. at 2630–

---

**5.** The CBN does cite to *In Re Grand Jury Proceedings,* 33 F.3d 342, 350 (4th Cir.1994) (applying *Zolin*) and two other unrelated Fourth Circuit cases, for its position that the Fourth Circuit has effectively expanded the holding in *Zolin* beyond assertions of the crime fraud exception. *See* CBN Objections at n. 4. This Court is of the opinion that the Fourth Circuit's decision in *Grand Jury* does just the opposite. That is, the Fourth Circuit's decision in *Grand Jury* is specifically limited to the context where crime fraud is asserted. In *Grand Jury,* the Fourth Circuit clearly stated that *"Zolin* did not provide a general rule applicable to all in camera reviews of any material submitted by parties," and that *"Zolin* does not proscribe all in camera submissions absent the requisite threshold showing." *Grand Jury,* 33 F.3d at 350.

31. While it is necessary for a party to make a *prima facie* showing of fraud before a court will review attorney client documents under the crime fraud exception, there is no basis for such a showing under ordinary circumstances.[6] Additionally, there is no indication that the Supreme Court intended for its holding in *Zolin* to apply to a case such as this.

▮▮▮ While it may be unusual for a court to conduct an *in camera* review of documents other than those specifically objected to, the CBN has not cited, nor has this Court found any prohibition making such an inquiry clearly erroneous or contrary to law. Indeed, once a court makes a determination that it will conduct an *in camera* review, it must be afforded a certain degree of leeway and discretion. The *prima facie* showing required by *Zolin* is inapplicable in this case since there is no allegation of crime fraud. This Court agrees with Judge Miller's reasoning and exercise of discretion.

B. *Whether the CBN Was Afforded Sufficient Due Process*

▮▮▮ The CBN contends that, as a result of Judge Miller's *sua sponte* review of the asserted attorney client privileged documents, its due process rights were violated. Specifi-

cally, the CBN argues that since the FEC did not challenge the appropriateness of the asserted attorney client documents, it did not present arguments as to why the privilege was appropriate.[7] Based on the CBN's position that it was denied due process, the CBN asks that this Court reverse Judge Miller's ruling with regard to the asserted attorney client privileged documents.

On November 26, 1997, Judge Miller ordered the CBN to produce for *in camera* review all documents for which the CBN asserted a privilege—either attorney client or work product. *See* Order at 9–10 (Nov. 26, 1997). In that Order, the Court clearly stated that "after inspecting the documents, [the Court] will classify each document, or portions thereof, as applicable, as protected by the attorney client privilege, protected by the opinion work product privilege, protected by the non-opinion work product privilege, or not privileged at all." *See* Order at 10 (Nov. 26, 1997). The CBN adhered to Judge Miller's Order, and on December 4, 1997, produced ninety documents for which it claimed either the attorney client privilege, the work product privilege or both. The CBN did not oppose or object to Judge Miller's November 26, 1997, Order requiring production of all ninety documents.[8] Judge Miller's order re-

---

6. As set forth above, the facts in *Zolin* involved an allegation of crime fraud in an attempt to bypass the assertion of attorney client privilege. Due to the serious nature of such an allegation against an officer of the court it is not surprising that the Supreme Court would require a *prima facie* showing prior to conducting an *in camera* review.

7. The CBN acknowledges that the Fourth Circuit has not directly addressed the issue of notice in the context of *sua sponte in camera* review of privileged documents. *See* CBN Objections at 11. However, the CBN cites to four recent unpublished opinions where the Fourth Circuit has ruled that notice and an opportunity to be heard are required generally on *sua sponte* decisions on dispositive motions or motions for sanctions. The CBN also cites several Fourth Circuit cases where the court held that notice and an opportunity to be heard were required before issuing *sua sponte* summary judgment for a party. For similar reasons, the CBN argues that there are compelling reasons of fairness and efficiency not to issue *sua sponte* rulings on whether an asserted privilege applies. This Court finds that a *sua sponte* decision to dismiss a case or to grant sanctions is easily distinguished from a decision

to. review asserted privileged documents that a party knowingly submits *in camera*. Therefore, the case law cited by the CBN does not persuade this Court that Judge Miller acted clearly erroneously or contrary to law.

8. The FEC argues that the CBN has waived its right to object to Judge Miller's *in camera* review since it did not specifically object to Judge Miller's production order. The CBN contends that it is not presently objecting to Judge Miller's order to produce the documents for *in camera* review, but to Judge Miller's ultimate decision regarding the documents. The CBN emphatically claims that it is "inherently unreasonable to expect a party to have the prescience to anticipate court rulings on issues not raised in an action." This Court declines to rule on the issue of whether the CBN waived its right to object to Judge Miller's Nov. 1997 Order, and notes that a district court can in its discretion consider untimely objections to a magistrate's order. *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986) (waiver rule is not jurisdictional). However, the Court notes that there is no procedural prohibi-

quiring production of all ninety asserted privileged documents should have put the CBN on notice that Judge Miller intended to review all of the documents, not just the asserted attorney work product documents.

Following submission of the asserted privileged documents, the CBN filed a request to file an *ex parte* explanatory declaration under seal for *in camera* review. The CBN specifically sought permission to file a declaration with "an amplified explanation regarding the grounds for characterization of each document as protected by the attorney client privilege *and/or* the work product doctrine." *See* CBN Motion at 2 (Dec. 8, 1997) (emphasis added). The CBN additionally explained that its requested "exposition [would] assist the court because the nature and purpose of each document may not be apparent from the face of the document." *Id.* The CBN acknowledged in the same motion that it might be required to produce "any of the 90 (ninety) documents" as a result of the Court's review. *Id.* at 3. The language included in CBN's own request belies its present position that it was without notice that the attorney client documents might be reviewed by the Court.

Judge Miller allowed the submission of the declaration, over the FEC's objection, and ordered the CBN to include in the declaration a list for each document naming all of the people who had access to the asserted privileged documents, including each person's job title and affiliation. Certainly at this juncture the CBN should have realized, if it did not already, that Judge Miller intended to review all of the asserted privileged documents, not just the asserted work product documents.

Based on the factual and procedural history of this case, the Court finds that the CBN was on notice that Judge Miller intended to, or at least potentially could, review all of the documents provided by the FEC, *i.e.,* the documents listed on the privilege log including attorney client and attorney work product. The Court further finds that the CBN had multiple opportunities to be heard regarding its claim of attorney client privilege.

Therefore, the CBN's Due Process rights were satisfied in this case.

### C. *The CBN's Motion to File an Additional Ex Parte Declaration*

█ Based on its position that it was not and should have been provided a opportunity to heard regarding the assertion of the attorney client privilege, the CBN now moves the Court for leave to file an additional declaration under seal. *See* CBN Motion (Feb. 1998). The FEC opposes the CBN's motion arguing that if the CBN wished to present argument regarding the documents for which it asserted the attorney client privilege, it should have done so in the first instance when it presented the Halliday declaration to Judge Miller under seal. This Court agrees.

As explained above, the Court finds that the CBN had sufficient opportunity to file such a declaration earlier in this litigation and chose not to. The CBN argues that it did not include argument related to attorney client privilege in an attempt to be succinct in its pleading. However, in granting the CBN's original request to file an *ex parte* declaration, Judge Miller placed no restriction on the content or page length of the declaration. No one can dispute that Judge Miller provided the CBN with an extremely generous and thorough review of the CBN's asserted privileged documents. Had the CBN elected to include in its first *ex parte* declaration an explanation for its assertion of the attorney client privilege, since it knew that Judge Miller had the documents in his possession, this Court feels sure that Judge Miller would have meticulously reviewed that information as well.

Whatever reason or litigation strategy that influenced the CBN not to include information related to the attorney client privilege in its declaration in the first instance is immaterial to this Court's analysis. The CBN had ample opportunity to explain its claim of privilege in either its Privilege Log, its memorandum in opposition to FEC's motion to compel, the Halliday declaration submitted *ex parte* and under seal for *in camera* review, or in its most recent filings with this Court. For whatever reason, in each in-

tion under Rule 72(a) to objecting to an order

such as Judge Miller's Nov. 1997 pre-trial order.

stance the CBN chose not to explain its assertion of the attorney client privilege. Having decided not to present all of its arguments in the first *ex parte* declaration, this Court finds that the CBN should not be given what would amount to a second (or third) bite at the apple. Allowing another *ex parte* declaration at this juncture would be unnecessarily burdensome to the Court, unfair to the FEC, and potentially delay the underlying litigation.

## II. *The Asserted Work Product Documents*

Judge Miller thoroughly reviewed and correctly explained the standard set forth in Fed.R.Civ.Proc. 26(b)(3) which limits discovery of attorney work product documents "only upon a showing that the party seeking discovery has substantial need of the materials ... and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." The CBN objects on three grounds. First, the CBN asserts that since Judge Green approved the stipulated dismissal of the *MCFL* defense, the basis for Judge Miller's decision is essentially made moot. Second, the CBN argues that the FEC did not meet its burden of proof, and that Judge Miller impermissibly considered information other than that provided by the FEC. Finally, the CBN argues that the bases for Judge Miller's determination of substantial need and availability of the substantial equivalent are incorrect factually.

### A. *The Impact of the Stipulated Dismissal of the Counterclaim and MCFL Defense Asserted by the CBN*

■ As a threshold matter, the Court must determine what impact, if any, Judge Green's February 17, 1997, Order dismissing the CBN's *MCFL* defense and the counterclaims filed by TCC, has on these proceedings. For obvious reasons, the CBN argues

that Judge Green's Order removes any "substantial need" the FEC might have had for the asserted privileged documents, thereby effectively mooting the basis for Judge Miller's Order. The FEC argues that Judge Miller's finding of substantial need was not limited to the TCC defense from *MCFL*, but relates to the "TCC's political and financial activity" generally. *See* Jan. 1998 Order at 2, 62. Thus, the FEC contends that Judge Green's dismissal order does not change its "substantial need" for the non-opinion work product documents.

The Court has thoroughly reviewed Judge Miller's decision, the briefs submitted by the parties, and the argument presented at the hearing in this matter. Based on its review, the Court finds that while Judge Miller surely considered the *MCFL* defense in his analysis of "substantial need," his decision is not so critically linked to the asserted defense that without it the decision becomes moot. Therefore, the dismissal order in and of itself, is not sufficient basis for this Court to reverse Judge Miller's decision.

Without carefully examining the factual allegations and legal basis for the underlying case, the Court surmises from the briefs and argument submitted to date that the FEC alleges that TCC engaged in coordinated activities with the CBN in violation of the FECA. *See* Complaint; Transcript at 24–26 (Mar. 6, 1998). If TCC had chosen to pursue a defense under *MCFL*, it would have had to provide information to the FEC regarding *inter alia* the size and kind of TCC's contributions. *See* Transcript of Hearing at 24–25; *MCFL*, 479 U.S. at 265, 107 S.Ct. at 631–32. Since TCC no longer asserts the *MCFL* defense, it may not have to provide the particular information outlined in *MCFL* to the FEC. Nonetheless, the TCC's coordinated expenditures with the CBN remain relevant to the claims brought by the FEC under the FECA.[9] *See* Transcript at 24–26.

---

9. The FEC alleges that, regardless of whether the TCC asserts a *MCFL* defense, a "cross-over" existed between the CBN and TCC's interactions and campaign contributions in violation of the FECA. *See* Transcript of Hearing at 25–27 (referring to FEC's Complaint and TCC's Answer filed in underlying action; the CBN's interview of President Bush and an alleged fax from the TCC of information to President Bush regarding the interview; TCC's alleged distribution of information in preparation of the CBN/Bush interview; Senator Helms' 1990 campaign and an indication of possible ties between Pat Robertson). The FEC asserts that the correspondence is such that one can not easily separate the parties' actions. *Id.*

Based on the general allegations in the Complaint, and the fact that nothing in Judge Miller's Opinion indicates that he considered the asserted *MCFL* defense the linchpin to his substantial need analysis,[10] the Court finds that the voluntary dismissal of the *MCFL* defense, in and of itself, does not make Judge Miller's decision clearly erroneous, or cause this Court to conduct a new examination of each document to determine substantial need.

B. *Whether Judge Miller Was Limited to The Information Presented by the FEC in Determining Substantial Need*

 The CBN argues that Fed.R.Civ. Proc. 26(b)(3) places the burden of showing "substantial need" for a non-opinion work product document on the party seeking discovery and that FEC did not satisfy its burden. This Court agrees that just as the burden of establishing that document is privileged is on the party asserting the privilege, the burden of showing a "substantial need" for a document is on the party seeking to overcome the privilege. Fed.R.Civ.P. 26. Judge Miller acknowledged that in making his determination he did not rely solely on the information presented by FEC. He additionally considered the information he "gleaned" from the *in camera* review of the documents to assess the FEC's "substantial

need" for the documents.[11] Jan. 1998 Order at 62. The question before this Court is whether the Court's consideration of additional information was clearly erroneous.

Judge Miller relied on *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971 (7th Cir. 1996), for the proposition that he was not limited to the arguments presented by FEC in determining "substantial need." He concluded that because the Seventh Circuit in *Logan* did not criticize the district court's *in camera* inspection of privileged documents, the court provided a silent endorsement of the practice of *in camera* review in the context of assessing "substantial need." The CBN argues that the facts in *Logan,* where a claim of bad faith was alleged and the documents sought were the only documents that could prove the alleged bad faith, are distinguishable from the facts before the Court in this discovery dispute.[12] This Court agrees that the Seventh Circuit's silence in *Logan* does not necessarily equate to an endorsement of *in camera* review to establish "substantial need" in a case such as this.

However, as the FEC points out, there are obvious practical limitations on a party requesting asserted privileged documents and its ability to present detailed argument as to its "substantial need" for documentation it has not seen. Therefore, while the burden of proof is on the party asserting the "substantial need," when a court determines that *in*

---

**10.** Judge Miller clearly stated that the documents sought by the FEC were substantially needed for both the *MCFL* defense and the claims generally. *See* Order at 61 ("Recall also that the FEC needs these documents because they bear directly on substantive issues raised in the FEC's complaint in the D.C. litigation... The Court agrees with the FEC that the non-opinion work product documents that the C & L holds bear directly on the issues raised in the complaint concerning TCC's political and financial activity."), and 63 ("In summary, the Court finds as a fact that all these non-opinion work product documents are highly relevant to, probative of, and may be outcome-determinative of the issues in the D.C. litigation.").

**11.** The CBN cites to *Hendrick v. Avis Rent A Car System, Inc.*, 916 F.Supp. 256, 261 (W.D.N.Y. 1996), in support of its position that the FEC bears the burden of establishing substantial need. However, the *Hendrick* case did not involve an *in camera* review to determine substantial need. Instead, *Hendrick* involved a personal injury

claimant who requested to watch the defendant car manufacturer's crash tests, scheduled as part of defendant's preparation for trial. In *Hendrick,* the court did not allow plaintiff to view the test crashes finding that the plaintiff had not met its burden of establishing substantial need and unavailability. *Id.* at 260. *Hendrick* confirms that the burden of proof is on the party seeking the document, but is otherwise unpersuasive since it does not specifically address what outside information a reviewing court can consider.

**12.** The CBN's position with regard to Judge Miller's reliance on *Logan* for his substantial need analysis, is almost the antithesis of its position regarding Judge Miller's reliance on the *Zolin* opinion for his determination of *in camera* review of attorney client documents. That is, the CBN contends that the *Zolin* case should be applied in all circumstances, regardless of whether crime fraud is alleged. On the other hand, the CBN argues that the *Logan* case should only be applied when a claim of bad faith is alleged.

*camera* review is necessary under *National Union,* the court must have a certain degree of leeway in its *in camera* review to determine whether for the purposes of the litigation there is a "substantial need" for the asserted privileged documents. Indeed, it would be illogical to require a reviewing court to turn a blind eye to documents or be hamstrung when it conducts its *in camera* review. While the moving party has the burden of showing "substantial need," a court can not be strictly limited in its consideration to the arguments presented by counsel, particularly when it is clear to the court from its *in camera* review that the documents should be discoverable. Therefore like this Court's decision regarding Judge Miller's review of the asserted attorney client documents, the Court finds that Judge Miller did not act clearly erroneously or contrary to law when he reviewed the documents for "substantial need" and considered information other than that specifically argued by the FEC. Judge Miller's method of review alone is not enough to warrant this Court's modification or reversal under F.R.Civ.P. 72(a).

C. *Whether the FEC Has a "Substantial Need" for the Documents and the Substantial Equivalent is Unavailable By Other Means Without Undue Hardship*

 The CBN additionally objects to Judge Miller's determination under Fed. R.Civ.P. 26(b)(3) that the FEC is "unable without undue hardship to obtain the substantial equivalent of the materials by other means." Judge Miller found that FEC could not obtain the same information elsewhere due primarily to the limit on depositions in the D.C. litigation combined with the potential that the deponents might not be able to recall sufficient detail regarding meetings that took place at least five years ago. *See* Jan. 1998 Order at 64–67. The CBN again objects to what it considers as Judge Miller overstepping his role in reviewing the docu-

ments and relying on reasons not specifically raised by the FEC.

Judge Miller based his determination regarding the limitation in taking depositions in part on argument presented by the FEC's counsel at the November 20, 1997, hearing. At the hearing counsel did not state how many depositions the FEC was allowed to take, but just that the number of depositions were limited. *See* Nov. 20, 1997, Hearing Transcript at 31. While the CBN apparently did not contest the FEC's assertion at the hearing, it now suggests that because the parties were actually allowed to take up to fifty depositions in the underlying litigation, Judge Miller's decision was in error.[13] The details of how many depositions are allowed are irrelevant to this Court. Judge Miller determined that, based on the information presented by counsel, the limitation in the number of depositions in the underlying case was relevant to his analysis of whether the FEC could readily obtain the same information by other means. Based on the record before Judge Miller, this Court finds that his decision was not "clearly erroneous or contrary to law."

Judge Miller also found that the authors of the documents might not be able to recall what occurred at the meetings referenced in the privileged documents since the referenced meetings took place at least five years ago. *See* Jan. 1998 Order at 65–66. The CBN objects to this finding and cites to Fifth Circuit and a New York District Court cases where courts held that claims of faulty memory must be substantiated to require production of a work product document.[14] *See In Re Intn'l Systems and Controls Corp. Securities Litigation,* 693 F.2d 1235 (5th Cir. 1982) (finding that a particularized showing was necessary prior to ordering production of work product documents); *Xerox v. I.B.M. Corp.,* 64 F.R.D. 367, 382 (S.D.N.Y.1974) (ordering documentation to be produced when 33 of 37 deponents could not recall information when deposed).

---

13. The FEC responded that, at the time of briefing in this matter (Jan. 1997), it had already taken forty of its fifty allowable depositions, and that the remaining depositions were already allotted to other deponents. *See* FEC Responses (Feb. 1998).

14. The CBN did not cite, nor did this Court find, any similar restriction on the work product doctrine in the Fourth Circuit.

The CBN argues that based on the record before the Judge Miller, he could not reasonably conclude whether the witnesses would be able to recall the information if deposed. This Court disagrees. While Judge Miller may not have had particularized facts regarding unsuccessful attempts to take depositions, he did have sufficient information before him to balance the CBN's claim of privilege over its non-opinion work product documents with the FEC's need and ability to obtain the substantial equivalent. *See In re Intn'l Systems and Controls*, 693 F.2d at 1241 (finding that court must conduct a balancing test to determine whether there is a substantial need for the documents and the information is unavailable by other means). While more particularized information from the FEC might have made Judge Miller's decision easier, his decision was not clearly erroneous or an abuse of discretion.[15]

Since this Court finds that Judge Miller's decision regarding the number of depositions and recollection of witnesses supports his decision, it need not review the other bases for Judge Miller's decision.[16] *See e.g., Harman v. Levin*, 772 F.2d at 1152 (finding that while bankruptcy judge "may have explored some of the factors in more detail than others" the court's decision was not "clearly erroneous").

### III. *Whether Magistrate Judge Was Correct in His Determination that Certain Documents Were Non–Opinion Attorney Work Product Documents*

Besides the CBN's general objections to the review provided by Judge Miller, the CBN additionally makes specific objections to Judge Miller's decisions regarding six of the asserted work product privileged documents (1, 44, 48, 52, 54 and 55).[17] Since the FEC is not privy to the specific information contained in the documents, it was unable fashion a response to the CBN's specific objections. Due to the fact that the documents were submitted and have remained under seal with the clerk's office, and the objections submitted by the CBN require review of the specific documents, this Court retrieved Documents numbered 1, 44, 48, 52, 54 and 55, along with the *ex parte* Halliday declaration[18] to determine whether Judge Miller's decision comports with the accepted standard of review with regard to the attorney work product privilege or whether, as the CBN alleges, the decision was clearly erroneous.

#### A. *Document 1*

██ Document 1 is listed on the CBN's privileged log as an "analysis of CBN/CC relationship prepared in anticipation of litigation."[19] *See* Privileged Log attached as Ex.

---

**15.** At the hearing before this Court, Mr. Hershkowitz, counsel for the FEC, stated that the FEC had already attempted to depose CBN's Pat Robertson in relation to some of the allegations contained in the complaint. Counsel stated that Mr. Robertson's "memory in a lot of areas due to the passage of time is not as sharp as obviously lawyers would prefer." *See* March 1998 Hearing Transcript at 26. Counsel also stated that the FEC had "attempted to get the information … from a number of sources," and that the information held by Coopers "can't be obtained from anyone else because it involves … communications between people at Coopers and the attorneys for the CBN which there is a claim for privilege." *Id.* at 26–27; *see, e.g., Hickman v. Taylor*, 329 U.S. 495, 505, 67 S.Ct. 385, 390–91, 91 L.Ed. 451 (1947) (holding that the work product protection for attorney's thoughts, mental processes and opinions are protected regardless of the discovery method). While these facts were not directly before Judge Miller when he made the challenged decision, his concerns were obviously justified.

**16.** Judge Miller additionally found that due to the close relationship between the CBN and the TCC, the CBN witnesses might be hostile to FEC in the underlying litigation.

**17.** Judge Miller correctly relied on the Fourth Circuit's rule in *National Union Fire Ins. Co.*, 967 F.2d at 983–84, and found that any portion of a document containing "opinion" work product is undiscoverable regardless of "substantial need" under Fed.R.Civ.P. 26. *See* Jan. 1998 Order at 33–34. Therefore, the CBN's specific objections relate just to certain documents where Judge Miller determined that (1) the document or portions thereof were "non-opinion" work product and (2) the FEC had a "substantial need."

**18.** The Court only reviewed the paragraphs in the Halliday Declaration that relate to Documents 1, 44, 48, 52, 54 and 55.

**19.** The Court in its description of these and other potentially privileged documents is careful not to divulge more about the documents than is already available to the FEC. Therefore, when

7 to the CBN's Objections [hereinafter Log]. Judge Miller determined that Document 1 was a combination of opinion and non-opinion work product. *See* Order at 36–38 (Jan. 20, 1998). The CBN objects to Judge Miller's decision that the tabular data attached to the Document 1 (with the exception of the handwritten information) constituted non-opinion work product. *See* Jan. 1998 Order at 37–38.

The CBN relies on *In Re Allen*, 106 F.3d 582, 608 (4th Cir.1997),[20] in support of its position that the tabular data in Document 1 reflects the thought processes of the CBN's attorneys regarding prospective litigation. In *In re Allen*, the Fourth Circuit considered *inter alia* the contents of a typewritten summary of a meeting conducted by the party's attorney. As to one document (Document 17) the court determined based on the party's explanation and the contents of the document that the attorney's summary of the meeting constituted opinion work product since it reflected the attorney's focus in the litigation, "and hence, her theories and opinions regarding the litigation." *Id.* at 608. Similarly, the court in *Allen* determined that the fact that the attorney chose and requested certain pages from employment records constituted opinion work product. *Id.* (discussion of Document 20).

This Court has reviewed the tabular data attached to Document 1, and the Halliday *ex parte* declaration referencing Document 1.[21] Based on this Court's review, the tabular data appended to Document 1 differs from the opinion work product described in *Allen*. It is the Court's opinion that unlike the facts in *Allen*, the tabular data in Document 1 does not reflect a special arrangement of data by counsel, nor does it divulge thought processes or theories regarding the litigation. Further, there is no evidence or assertion in the record that the attorneys for the CBN or Coopers separated out the specific tabular

there is any question, the Court will refer to the Privileged Log provided by the CBN to the FEC and recite the description of the document as stated in the Log.

**20.** *Reh'g denied,* 119 F.3d 1129 (4th Cir.1997), *cert. denied* —— U.S. ——, 118 S.Ct. 689, 139 L.Ed.2d 635 (1998).

data from a larger data bank in anticipation of the IRS litigation. *Cf. Shelton v. American Motors Corp.*, 805 F.2d 1323, 1329 (8th Cir.1986) ("In cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research."); *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir.1985) ("We believe that the selection and compilation of documents in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product."), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985); *but see In Re San Juan Dupont Plaza Hotel Fire,* 859 F.2d 1007 (1st Cir.1988) (finding that preparation of documents lists did not automatically qualify for opinion work product protection); *Bohannon v. Honda Motor Co. Ltd.,* 127 F.R.D. 536 (D.Kan.1989) (distinguishing *Sporck* and ordering production of certain document lists). Like the courts in *San Juan* and *Bohannon*, this Court agrees with Judge Miller that the tabular data attached to Document 1 is merely a factual recitation of certain financial dealings of the TCC, and does not reveal the attorney's litigation strategy, thoughts or mental impressions. Therefore, Judge Miller's finding that the tabular data constitutes non-opinion work product is not clearly erroneous or contrary to law.

### B. *Documents 44 and 55*

■ Judge Miller found, and the CBN agrees, that Documents 44 and 55 constitute "To Do Lists" prepared by one of the CBN's attorneys. As an initial matter, the CBN objects to Judge Miller's classification of Documents 44 and 55 as non-opinion based on Judge Miller's decision classifying portions of Document 39, specifically "To Do Lists" contained therein, as opinion work product. *See* Order at 51–53. If a reviewing

**21.** The Court notes that, at least with regard to the documents at issue in this matter, the explanations provided by the CBN in its *ex parte* declaration are of minimal use to the Court in its analysis of the contents of the documents. Surprisingly, even though the *ex parte* declaration was submitted under seal for *in camera* review only, its descriptions are cursory and as a result, of little, if any, use to the Court.

Court determines that an opinion of the lower court is internally inconsistent, such a determination is grounds for modification under the "clearly erroneous standard." *Todd v. Corp. Life Ins. Co.*, 945 F.2d 204, 208 (7th Cir.1991) (finding that trial court's decision was internally inconsistent, and therefore required reversal).

Judge Miller does not specifically address any particular "To Do List" contained in Document 39, however he does classify certain portions of some of the "To Do Lists" as opinion work product. The CBN claims that there is no material difference between the lists contained in Documents 39, 44 and 55. Due to the nature of the CBN's allegation, the Court reviewed the "To Do Lists" contained in Documents 39, 44, and 55.

The fact that one document titled a "To Do List" is reviewed and determined opinion work product does not make every document titled "To Do List" an attorney's opinion work product. Similar to the notion that a party must do more than merely sending a document to his or her attorney in order to take advantage of the attorney client privilege, an attorney must do more than apply a certain label to a document to qualify for the opinion work product privilege. *See, e.g., Ledgin v. Blue Cross and Blue Shield of Kansas City*, 166 F.R.D. 496, 498–99 (D.Kan. 1996) (merely placing an attorney work product stamp on a document is not sufficient to show that a document was prepared in anticipation of litigation). One "To Do List" might include, for example, a reminder to "(1) interview the defendant's parents, and (2) request psychological report," and another "To Do List" might simply include a reminder to "(1) shepardize the case law, and (2) check local rules for deadlines." Obviously, these two lists would not both be considered opinion work product. Therefore, the fact that Document 39 contains a "To Do List" and is protected, does not equate to a rule in this case that "To Do Lists" are protected opinion work product. The CBN has not shown nor does this Court believe that Judge Miller's

decision should be overturned due to an internal inconsistency.

 However, the CBN additionally argues that Documents 44 and 55 reflect the "mental impressions" of the CBN's attorney in making a decision as to what action was necessary in the pending IRS litigation. This argument has more merit. Again, the CBN relies on *Allen* for its position that Judge Miller's decision was in error.

As stated above, the Court has reviewed the contents of Documents 44 and 55, along with the *ex parte* declaration submitted by the CBN. Without being intimately familiar with the facts, the legal issues and the various participants in the IRS/CBN litigation it is difficult for a court to determine whether certain items on a "To Do List" reflect strategy or are merely factual. That being said, it is the Court's opinion that to err on the side of caution, certain portions of Documents 44 and 55 should be redacted prior to producing the documents in discovery. Specifically, this Court finds that the following portions of Documents 44 and 55 qualify for protection under the opinion work product privilege and therefore are undiscoverable: in Document 44, starting with "Get a ..." (at approximately Line 7) through the end of the document; and in Document 55, all of tasks numbered 1, 2, and 3. For the reasons set forth above, the Court finds that the remainder of the contents of Documents 44 and 55 constitute facts, and are therefore, not protected by the opinion work product privilege.

### C. *Documents 48, 52 and 54*

Based on his *in camera* review, Judge Miller determined that Documents 48, 52 and 54 did not contain mental impressions, opinions or legal theories, and therefore, were discoverable under Fed.R.Civ.P. 26(b)(3) as non-opinion work product. *See* Order at 55 (Jan. 20, 1998).[22] The CBN objects to Judge Miller's determination for each of the documents.

 With regard to Document 48, the CBN claims that it reflects "a component for

---

**22.** Judge Miller considered Document 55 along with Documents 48, 52 and 54. Since the CBN objects to Document 55 on the grounds that it

constitutes a "To Do List" it was addressed above along with Document 44, also a "To Do List."

Coopers' strategy for handling an issue as well as Coopers' selection of materials that it thought were significant." *See* CBN Objections at 21. The CBN claims that Document 48 should be protected since it contains the thought processes of counsel's agent. Based on an examination of Document 48, this Court agrees that Document 48 reflects the mental processes in preparing for the IRS litigation. The fact that certain actions were taken in preparation of litigation, such as the actions described in Document 48, can be as reflective of the attorney's trial preparation or strategy in a case as a memorandum to the client regarding the strengths and weaknesses of a case. *See Allen*, 106 F.3d at 608. For these reasons, Document 48 is protected from discovery under the opinion work product privilege.

■ Similarly, the CBN claims that Documents 52 and 54 (an expanded version of Document 52) reflect Cooper's formulation of an issue for the IRS litigation. Like Document 48, this Court agrees that the last three lines of text on the first pages of both documents (beginning with "Issue" and ending with "copy") are opinion work product, and therefore, are not discoverable. However, the remainder of Documents 52 and 54 constitute either facts or a factual explanation, and do not reflect any opinion, strategy or mental processes of the CBN's attorney.

Documents 52 and 54 are described in the CBN's privileged log as "analysis of airplane usage . . ." Upon a review of the documents, the *ex parte* declaration, and the argument presented by the CBN, the Court finds that the majority of the contents of Documents 52 and 54 do not contain "analysis." Simply put, either an event happened or it did not. Documents 52 and 54 do not divulge any trial preparation, litigation strategy or mental processes. Therefore, except as specifically noted above, Documents 52 and 54 are discoverable.

## CONCLUSION

For all of the reasons set forth above, it is this Court's ORDER that Magistrate Judge Tommy Miller's January 20, 1998, Order and Opinion in this case is AFFIRMED in part and MODIFIED in part. The CBN is di-rected to comply with Judge Miller's Order, except as explicitly provided herein with regard to the redacted portions of Documents 44, 52, 54 and 55, and Document 48 in its entirety, and deliver said documents to the FEC by 12:00 p.m., April 20, 1998. It is further ORDERED for the reasons stated herein that the CBN's Motion for Leave to File Declaration Under Seal is DENIED.

The clerk is DIRECTED to send a copy of this order to all counsel.

The clerk is further DIRECTED to send a courtesy copy of this Opinion and Order to the clerk of the United States District Court for the District of Columbia.

It is so ORDERED.