**FEDERAL ELECTION COMMISSION,**
Plaintiff,

v.

**THE CHRISTIAN COALITION,**
Defendant.

No. CIVA96–1781(JHG)(AK).

United States District Court,
District of Columbia.

May 12, 1998.

Lawrence Mark Noble, Richard Blair Bader, Stephen E. Hershkowitz, Erin K. Monaghan, Federal Election Commission, Washington, DC, for Federal Election Commission.

Frank Myers Northam, Webster, Chamberlain & Bean, Washington, DC, for The Christian Coalition.

Bobby Roy Burchfield, Thomas Overton Barnett, Covington & Burling, Washington, DC, for George Bush, Former president, Dan Quayle, V.P., Former vice president, Bush–Quayle '92 Primary Committee, Incorporated, Robert M. Teeter, Mary J. Matalin, and Charles R. Black, Jr.

Anthony Joseph Coppolino, U.S. Department of Justice, Civil Division, for The Archivist of the United States, and National Archives & Records Administration.

Joseph William Koegel, Jr., Steptoe & Johnson, L.L.P., Washington, DC, for Christian Broadcasting Network, Inc.

Lawrence Mark Noble, Richard Blair Bader, Stephen E. Hershkowitz, Federal Election Commission, Washington, DC, for Federal Election Commission.

## MEMORANDUM OPINION
## AND ORDER

GREEN, District Judge.

Before the Court is a request to enter a stipulated protective order between plaintiff Federal Election Commission ("FEC") and a non-party, The Christian Broadcast Network ("CBN"). The proposed order would limit disclosure of documents that have been ordered to be produced pursuant to a subpoena that FEC caused to issue to CBN's accountants, Coopers & Lybrand in the Eastern District of Virginia. *See Federal Election Comm'n v. The Christian Coalition,* 178 F.R.D. 456 (E.D.Va.1998).

■ Joint motions for protective orders have become an increasingly common, almost routine, practice. But such motions should not be granted routinely. The business of the federal courts is the public's business— this is not a private dispute resolution service—and only if another public policy favors non-disclosure should such an order be issued. Reluctantly, the Court will sign the proposed Order, but the reasons and the

legal basis for doing so should be made a matter of public record.

## BACKGROUND

As part of its discovery efforts in this matter, the FEC has sought information about the relationship between The Christian Coalition and CBN. As part of that effort, on July 30, 1997, the Federal Election Commission ("FEC") caused to issue in the Eastern District of Virginia a subpoena duces tecum to CBN's accountants, Coopers & Lybrand ("C & L"). The subject of the subpoena are "all documents ... which in any way relate or refer to Christian Coalition from 1989 to the present."

C & L possesses documents responsive to the subpoena. Some documents were produced to the FEC; approximately 90 documents were withheld because CBN had asserted claims of attorney-client privilege or attorney work product immunity from disclosure. The basis for the claim is that CBN was engaged in litigation with the Internal Revenue Service regarding CBN's tax status. That dispute has recently been settled. *See FEC v. CC*, 178 F.R.D. at 458 n. 1. On October 7, 1997, the FEC filed a motion to compel production of the 64 documents that had been withheld under the work product doctrine in the Eastern District of Virginia ("the Virginia action").

CBN's first response to the subpoena was to move to intervene in the Virginia action so as to litigate its work product claims. The FEC did not oppose that intervention. On October 17, 1997, Magistrate Judge Miller, who presided over the Virginia action, granted CBN leave to intervene and accorded it the "rights of a party including the right to appeal any final judgment of the Court." *Federal Election Comm'n v. The Christian Coalition*, Misc. No. 2:97MC42, (E.D.Va. Oct. 17, 1997).

Having successfully been granted the right to raise and litigate its claims, CBN nevertheless filed a motion on October 22, 1997 in this civil action to intervene for the limited purpose of litigating the same claims of work product immunity. The motion was denied as moot. *See Federal Election Comm'n v. The Christian Coalition*, No. 96-1781 (D.D.C. Feb. 3, 1998) (Mem.Op.).

The present status of the Virginia action is that some documents were held not to be discoverable because they were privileged or were opinion work product and others were held discoverable because the FEC had shown it was entitled to certain non-opinion work product documents under Rule 26(b)(3) of the Federal Rules of Civil Procedure. *See Federal Election Comm'n v. The Christian Coalition*, 178 F.R.D. 61 (E.D.Va.1998), *aff'd and modified in part by* 178 F.R.D. 456 (E.D.Va.1998). CBN has appealed that ruling, and simultaneously sought a protective order from this Court, pursuant to FED. R.CIV.P . 26(c), in the event that the Fourth Circuit affirmed the Order requiring production. CBN's motion makes clear that a motivating factor for the motion is press interest in the documents. *See* CBN Mem. at (2) ("Due to intense press interest in these documents ... it is essential that protective provisions be in place before the documents are received by the FEC....").

## DISCUSSION

█ The Federal Rules of Civil Procedure do not squarely address the situation presented by the pending motion. Rule 26(b)(3) provides that documents

> prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative .. [may be discovered] only upon a showing that the party seeking discovery has substantial need of the materials ... and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

FED.R.CIV.P. 26(b)(3). This is a codification of the qualified immunity for trial preparation materials recognized by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). *See* FED. R.CIV.P. 26 advisory committee's notes (1970 Amendment).

The text of the rule leaves three noticeable gaps: (1) whether work product protection extends to materials prepared for any litigation or to only materials prepared for the litigation that generated the work product;

(2) whether work product protection survives termination of the litigation that generated the work product; and (3) whether materials prepared by or for a non-party for separate litigation should be treated as work product in subsequent or parallel litigation. *See Federal Trade Comm'n v. Grolier,* 462 U.S. 19, 26, 103 S.Ct. 2209, 2213–14, 76 L.Ed.2d 387 (1983) (discussing relation between Rule 26(b)(3) and FOIA exemption 5); 8 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2024 at 351–57 (2d ed.1994); Caroline T. Mitchell, Note, *The Work Product Doctrine in Subsequent Litigation,* 83 COLUM.L.REV. 412, 421–24 (1983).

Courts have come to differing conclusions on how broadly the work product privilege should apply. *Compare* 8 WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2024 nn. 12, 17 (collecting cases) *with id.* n. 15 (collecting cases). The more considered view appears to be that work product protection applies (1) to materials prepared for any litigation, *see Grolier,* 462 U.S. at 26, 103 S.Ct. at 2213–14; and that (2) because the rule applies equally to one-time litigants and repeat players, the protection survives the termination of the litigation for which it was prepared, *id.* at 30–31, 103 S.Ct. at 2215–16 (Brennan, J., concurring); and that under the rationale of *Hickman,* non-parties should be able to assert work product privilege claims even though Rule 26(b)(3) is phrased only in terms of the parties. *See* 8 WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2024 n. 17; Special Project, *The Work Product Doctrine,* 68 CORNELL L.REV. 760, 862–64 (1983). Even adopting this view, to determine whether a protective order should issue in the present circumstances, reference to the rationale for work product protection introduced by the Supreme Court is necessary. *See Hager v. Bluefield Reg'l Med. Ctr.,* 170 F.R.D. 70, 75–76 (D.D.C.1997).

In *Hickman,* the Court introduced two-tiered protection for the work product of attorneys: nonprivileged facts gathered by an attorney in preparation of litigation can be discovered upon a showing of "adequate reasons," but materials reflecting an attorney's opinions, judgments, or thought processes are entitled to a higher level of protection. *See Hickman,* 329 U.S. at 512, 67 S.Ct. at 394. The privilege afforded work product materials is designed to create a "zone of privacy within which an attorney can think, plan, weigh facts and evidence, candidly evaluate a client's case and prepare legal theories." *Coastal States Gas Corp. v. Dept. of Energy,* 617 F.2d 854, 864 (D.C.Cir.1980). "Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten." *Hickman,* 329 U.S. at 511, 67 S.Ct. at 393. The Court recognized that discovery of nonprivileged facts would be necessary in some cases:

> But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order.

*Id.* at 512, 67 S.Ct. at 394.

The documents ordered to be produced in the Virginia action contain nonprivileged, non-opinion work product.[1] The FEC has met its burden to show that *it* is entitled to these documents. But does its entitlement then require that the documents be shared with the world? Not at this stage of the proceeding. To hold otherwise would convert the Rule 26(b)(3) showing into a *de facto* waiver of work product protection. Such a holding would run counter to the Supreme Court's concern for protecting an attorney's zone of privacy in which she prepares her case. This could lead to the "inefficiency, unfairness and sharp practices" that the work product doctrine is designed to guard against. *See Hickman,* 329 U.S. at 511, 67 S.Ct. at 394.

---

**1.** The Magistrate Judge denied CBN's claim that the attorney-client privilege shielded document nos. 26, 36, 37, 41, 53, 56, 84, and 86. The protective order covers these only because the Magistrate Judge found these to be non-opinion work product. Were that not the case, extending a protective order to documents for which the attorney-client privilege has been waived, or to which it never attached, would be an impermissible attempt to put the genie back in the bottle.

For example, the fact that CBN has settled its dispute with the IRS cannot be dispositive. Were that litigation ongoing, and were the court to release freely the documents ordered produced, one agency of the government would receive a windfall by being relieved of making the Rule 26(b)(3) showing for the materials, simply because another agency had already demonstrated its entitlement and received them. It would not be hard to imagine a similar circumstance involving different divisions or subsidiaries of a large corporation involved in parallel litigation with the same party. A protective order in this case simply preserves the *Hickman* rationale; each and every party seeking these documents must meet the Rule 26(b)(3) requirements. To be clear, the protective order does not encompass facts that are available to the FEC from independent sources. It only extends to the work product derived from the documents produced in response to the subpoena.

Accordingly, it is hereby

**ORDERED** that the attached protective order shall be effective immediately.

IT IS SO ORDERED.