Michael J. O'CONNELL, in his official capacity as Jefferson County Attorney and Shelley Santry, in her official capacity as an Assistant Jefferson County Attorney, Appellants,

v.

Hon. Frederic J. COWAN, in his official capacity as Judge of the Jefferson Circuit Court, Division 13, Appellee.

and

Bruce Alan Brightwell; The City of Jeffersontown, Kentucky; and Detective Roscoe Scott, Real Parties in Interest.

No. 2009–SC–000596–MR.

Supreme Court of Kentucky.

May 20, 2010.

As Modified on Grant of Rehearing Dec. 16, 2010.

David A. Sexton, Assistant Jefferson County Attorney, Louisville, KY, Counsel for Appellants.

Frederic J. Cowan, Jefferson Circuit Court, Louisville, KY, Counsel for Appellee, Hon. Frederic J. Cowan, in his official capacity as Judge of the Jefferson Circuit Court, Division 13.

Bruce Alan Brightwell, New Albany, IN, Counsel for Real Party in Interest, Bruce Alan Brightwell.

Christopher Mills Mayer, Louisville, KY, Counsel for Real Parties in Interest, City of Jeffersontown, Kentucky and Detective Roscoe Scott.

## MEMORANDUM OPINION OF THE COURT

This is an appeal from an opinion and order of the Court of Appeals denying a petition for a writ to prohibit the trial court from enforcing its order requiring a former prosecutor to turn over her litigation file and to be deposed by a former defendant she prosecuted in district court. Because the trial court did not evaluate the request for discovery of the prosecutor's opinion work product under the heightened compelling need standard, we reverse the order denying the writ and remand to the Court of Appeals for further proceedings consistent with this opinion.

In 2005, attorney Bruce Alan Brightwell was charged with intimidating a participant in the legal process, terroristic threatening, and harassing communications in the Jefferson District Court. These charges stemmed, at least in part, from certain threatening email and instant messages sent to the alleged victims from Brightwell's computer. In March 2005, Jeffersontown Police Department Detective Roscoe Scott seized Brightwell's computers pursuant to a search warrant and delivered them to a forensic computer expert with the Louisville Metro Police Department. On July 21, 2005, an additional charge of tampering with physical evidence was filed against Brightwell. The basis of the new charge was that Brightwell had tampered with his computer so as to hide or otherwise destroy evidence of the mes-

sages in question. At the probable cause hearing, Louisville Metro Police Department Detective Craig, a computer expert, testified that he found no evidence of tampering in the computers he examined. On motion of the Commonwealth, the district court thereafter dismissed the tampering with physical evidence charge for lack of probable cause.

Brightwell ultimately entered an *Alford*[1] plea to a charge of harassing communications and entered into a diversion agreement with the Commonwealth. Subsequently, Brightwell filed a civil action against Detective Roscoe Scott and the City of Jeffersontown, alleging, among other claims, abuse of process, malicious prosecution, intentional infliction of emotional distress, and a violation of 42 U.S.C. Section 1983. The complaint alleged that Scott recommended to Shelley Santry, assistant Jefferson County Attorney, that she file the tampering with physical evidence charge even though there was no evidence to support it. Neither Santry nor the Jefferson County Attorney's Office, Jefferson County, or the Commonwealth of Kentucky were named defendants in the civil suit brought by Brightwell.

In his answer and in discovery responses, Scott denied the allegation that he recommended that the tampering charge be brought against Brightwell. In his interrogatory responses, he identified Santry as a witness who could support his denial and generally identified the Jefferson County Attorney's office as the place where documents and persons with knowledge to support his denial could be found. Thereafter, Brightwell filed a subpoena duces tecum and *ad testificandum* to Santry. The subpoena commanded Santry to appear at a deposition to produce documents that, according to Santry, essential-ly comprise her entire litigation file on Brightwell's prosecution.

The office of the Jefferson County Attorney, on behalf of Santry, responded with a motion to quash the subpoena. Following the filing of the motion to quash, the parties and the Jefferson County Attorney's Office reached an agreement whereby Santry would answer interrogatories relating solely to communications between Santry and Scott and that Santry would also produce documents provided to her by Scott. The agreement stated that Santry reserved the right to object on work product grounds.

After receiving Santry's answers to interrogatories, Brightwell filed a motion for a hearing on the motion to quash the subpoena, arguing that Santry's responses to his interrogatories were inconclusive. In her responses to interrogatories that directed her to identify those "oral communications" from Scott that led her to file the tampering with physical evidence charge, Santry replied that "[r]espondent states that she recalls having conversations with Scott, but cannot recall the specifics of those conversations." As to the documents she was to provide, Santry maintained that she produced all written communications from Scott that were contained in her litigation file. Brightwell argued to the trial court that he needed to take Santry's deposition and review other documents withheld under claim of privilege in an effort to refresh Santry's recollection or to determine exactly what her recollection was. The Jefferson County Attorney's office contended that information sought from Santry was privileged as work product under Kentucky Rules of Civil Procedure (CR) 26.02(3)(a), and thus not subject to disclosure.

---

1. *See generally North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

In an opinion and order entered on August 4, 2008, the trial court ruled that the work product privilege in CR 26.02(3)(a) did not apply to the information sought from Santry in this case because neither Santry nor the county attorney's office was a party to the civil litigation commenced by Brightwell. Alternatively, the trial court found that even if the work product privilege applied here, Brightwell was, nevertheless, entitled to obtain the information from Santry because he made the required showing under CR 26.02(3)(a) that he was in substantial need of the information and was unable to obtain the substantial equivalent of the information by other means. The trial court concluded, "Thus, [Brightwell] is left with no other alternative than to take Santry's deposition and obtain her testimony and whatever relevant documents in her litigation file that she has yet to disclose." The court then compelled Santry to appear for deposition by Brightwell and ordered her to provide Brightwell with "all documents generated while the underlying prosecution of Brightwell was pending, which in any manner related to the decision to charge Brightwell with Tampering with Physical Evidence, including but not limited to all reports, memos, correspondence, or notes which were relied upon in making that charge."

The Jefferson County Attorney and Santry thereafter filed a petition for a writ of prohibition in the Court of Appeals seeking to prohibit the trial court from enforcing the discovery order against Santry. On August 18, 2009, the Court of Appeals entered its opinion and order denying the petition. Citing *Doubleday v. Ruh*, 149 F.R.D. 601 (E.D.Cal.1993), the Court of Appeals agreed with the trial court that the work product privilege in CR 26.02(3)(a) did not apply to Santry's litigation file on Brightwell's prosecution and information regarding the prosecution be-

cause the criminal proceeding had been terminated, and neither Santry nor the Jefferson County Attorney's office was a party to the subsequent civil action. The Court of Appeals further reasoned:

The best evidence to determine the truth of Scott's [sic] would be to determine the affect [sic] Scott had on Santry's decision to prosecute Brightwell for Tampering with Physical Evidence. Thus, given the fact that the mental impressions and thought processes developed by Santry during the course of the unsuccessful criminal prosecution will determine the truth or falsity of Scott's defense in the subsequent civil proceeding, the Jefferson County Attorneys' Office failed to meet its burden that the information possessed by Santry is protected under the work product privilege. Therefore, the Jefferson Circuit Court did not err by ordering Santry to appear for a deposition and to produce a copy of all documents generated while the underlying prosecution of Brightwell was pending, which in any manner relate to the decision to charge Brightwell with Tampering with Physical Evidence, including but not limited to all reports, memos, correspondence, or notes which were relied upon in making that charge.

The Court of Appeals also agreed with the trial court that even if the work product privilege applied here, pursuant to CR 26.02(3)(a), Brightwell demonstrated "substantial need of the material in the preparation of his case and that he is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means."

The Jefferson County Attorney and Santry filed this matter of right appeal from the denial of the Court of Appeals of the petition for writ of prohibition. "[T]his Court has articulated a strict standard to

determine whether the remedy of a writ is available." *Cox v. Braden,* 266 S.W.3d 792, 796 (Ky.2008). In *Hoskins v. Maricle,* we said

> A writ of prohibition *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

150 S.W.3d 1, 10 (Ky.2004).

■ There is no claim that the trial court was acting outside its jurisdiction in this case. So the question before us is whether the trial court is acting or about to act erroneously, although within its jurisdiction; and there exists no adequate remedy by appeal or otherwise, and great injustice and irreparable injury will result if the petition is not granted. Only after an appellate court determines that waiting for an appealable judgment would deprive an appellant of an adequate remedy, or cause a great injustice or irreparable injury, does the appellate court consider whether the lower court erred in its interlocutory ruling on the merits; and, even then, a writ is discretionary. *Cox,* 266 S.W.3d at 796–97.

> As a practical matter, whenever a discovery violation occurs that allegedly allows discovery in error, a party will not have an adequate remedy by appeal because "once the information is furnished it cannot be recalled." [*Bender v. Eaton,* 343 S.W.2d 799, 801 (Ky.1961)]. The information may or may not be used at trial and, generally, the admissibility of the information is not affected by the discovery violation. *See, e.g., Transit Authority of River City v. Vinson,* Ky. App., [703 S.W.2d 482, 486 (1985)] ("[W]ork product immunity protects only the documents themselves and not the underlying facts.") Thus, when information that is obtained from a party in violation of the discovery rules is admitted as evidence at trial, this fact alone does not provide grounds for objecting to the introduction of the evidence and, hence, an aggrieved party has no means of preserving the issue for appeal.

*Wal–Mart Stores, Inc. v. Dickinson,* 29 S.W.3d 796, 800 (Ky.2000).

■ Because Appellants are alleging that the discovery of the work product information was allowed in error, Appellants have made the required showing that they have no adequate remedy by appeal or otherwise; and great injustice and irreparable injury will result if the petition is not granted. So we move on to the question of whether the trial court acted erroneously when it ordered Santry to appear for deposition and provide Brightwell with all documents related to the decision to charge Brightwell with Tampering with Physical Evidence. In analyzing this question, we are mindful of our precedent indicating that privileges be narrowly construed, *see, e.g., Sisters of Charity Health Systems, Inc. v. Raikes,* 984 S.W.2d 464, 468 (Ky.1998). But we are also aware of United States Supreme Court precedent recognizing the need to protect attorneys against unwarranted invasions into their case files even on items that do not fall within the attorney-client privilege such that a party desiring discovery of such attorney "work product" must show a particular need to access these materials that cannot easily be met through other

means.[2]

Our Kentucky civil rule on work product, CR 26.02(3)(a), provides:

Subject to the provisions of paragraph (4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under paragraph (1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

■ At the outset, we must determine if the work product privilege even applies in this case since Santry and the county attorney's office are not parties to the subsequent litigation and because the material sought was generated in anticipation of the criminal case, which is now terminated. The issue of whether the work product privilege in CR 26.02(3)(a) applies to nonparties to the current lawsuit has not been addressed in Kentucky, except in the context of a former criminal client seeking his own file from his former attorney, which is not the case here. *See Hiatt v. Clark*, 194 S.W.3d 324 (Ky.2006). By its plain language, CR 26.02(3) may not apply to the present case; however, the broader work-product doctrine recognized in *Hickman v.*

*Taylor* does. *See Sporck v. Peil*, 759 F.2d 312, 316 (3rd Cir. 1985); *In re Grand Jury Subpoenas Dated March 19, 2002, and August 2, 2002*, 318 F.3d 379, 383 (2nd Cir. 2003) (recognizing that Federal Rules of Civil Procedure (Fed. R. Civ. P.)) 26(b)(3), counterpart to CR 26.02(3), only partially codifies work product protection provide in *Hickman v. Taylor*.

■ "The work-product doctrine is designed to protect an adversary system of justice," *Morrow v. Brown, Todd & Heyburn*, 957 S.W.2d 722, 724 (Ky.1997), and is rooted in the United States Supreme Court's decision in *Hickman v. Taylor*. CR 26.02(3)(a) is nearly identical to its federal counterpart, Fed.R.Civ.P. 26(b)(3). So, in addition to Kentucky case law, we shall look to other state and federal cases construing the rule for guidance on the issue.

Brightwell argues that CR 26.02(3)(a) has no application here because, by its express terms, it affords protection only to documents prepared "by or for another party or by or for that other party's representative." CR 26.02(3)(a). *See In re California Pub. Util. Comm'n*, 892 F.2d 778, 781 (9th Cir.1989); *Fed. Trade Comm'n v. Grolier Inc.*, 462 U.S. 19, 25, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983). Indeed, it has been held that that Fed.R.Civ.P. 26(b)(3) provides no work product protection for a prosecutor's files when that prosecutor is not a party to the subsequent civil litigation. *Doubleday*, 149 F.R.D. at 606. Nevertheless, several courts have extended work-product protection to non parties when that vindicated the purposes underlying the doctrine. *See, e.g., Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 175 (S.D.N.Y.2008); *Fed. Election Comm'n v. Christian Coalition*, 179 F.R.D. 22, 24 (D.D.C.1998); *Ba-*

**2.** *Hickman v. Taylor*, 329 U.S. 495, 511–12, 67 S.Ct. 385, 394, 91 L.Ed. 451 (1947).

*singer v. Glacier Carriers, Inc.*, 107 F.R.D. 771, 772 (M.D.Pa.1985). And at least one court has specifically held that the work product privilege does not terminate for a criminal case when the criminal case is completed and work product from the former criminal defense counsel is sought in a subsequent civil case. *See Wood v. McCown*, 784 S.W.2d 126, 129 (Tex.App. 1990).

As the Supreme Court stated in *Hickman*,

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways-aptly though roughly termed by the Circuit Court of Appeals in this case ([*Hickman v. Taylor*] 153 F.2d 212, 223 [(3rd Cir.1945)]) as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp prac-

tices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

329 U.S. at 510–11, 67 S.Ct. 385. Other courts have recognized that the necessity for work product protection recognized in *Hickman* may often apply beyond the explicit limitations of Fed. R. Civ. P. 26(b)(3), in particular to situations in which the work product of an attorney who does not represent a party in the current litigation is sought. For example, the United States District Court for the District of Columbia has stated:

> the more considered view appears to be that work product protection applies (1) to materials prepared for any litigation and that (2) ... the protection survives the termination of the litigation for which it was prepared, and that under the rationale of *Hickman*, non-parties should be able to assert work product privilege claims even though [Fed. R. Civ. P.] 26(b)(3) is phrased only in terms of the parties.

*Federal Election Comm'n*, 179 F.R.D. at 24 (citations omitted). Similarly, the United States District Court for the Southern District of New York notes that other courts have recognized that even where Fed. R. Civ. P. 26(b)(3) might not technically apply when the attorney whose work product is sought does not represent a party in the current litigation, work product protection might still be available under the common law work product doctrine. *Allied Irish Banks*, 252 F.R.D. at 173. So that court stated that "courts should afford work product protection to non-parties if disclosure would "(1) alter attorney behavior, (2) reward sloth, or (3)

interfere with ongoing litigation." Id. at 175.

■ We agree with such cases recognizing that work product protection may still be available under the common law, particularly *Hickman* and its progeny, even where the attorney whose work product is sought does not represent a party in current litigation, and Fed. R. C. P. 26(b)(3) and its counterpart in Kentucky, CR 26.02(3)(a), may not technically be applicable. Although we have not reached this precise issue before today, our precedent has recognized that CR 26.02(3)(a) (like its federal counterpart) perhaps does not fully incorporate the full scope of the work product protection provided in *Hickman*. *See Morrow*, 957 S.W.2d at 724 (noting that "[t]he Federal Rules of Civil Procedure *substantially* codified the *Hickman* decision in what is now Rule 26(b)(3). Its counterpart in the Kentucky Rules of Civil Procedure, CR 26.02(3)(a), is patterned after the Federal Rule(4)") (emphasis added). *See also id.* at 925 (noting that "[t]his case does not fall within the literal terms of CR 26.02(3)(a), because the rule refers to information generated and impressions gained in preparation for litigating the case in which the rule is invoked" but, nonetheless, recognizing some degree of work product protection for "information generated in a prior case which was final and closed."). *See also Newsome by and through Newsome v. Love*, 699 S.W.2d 748, 749 (Ky.App.1985) ("Some of the language, and all of the spirit, of *Hickman v. Taylor* was codified in the federal civil rules amendments to Fed. R. Civ. P. 26(b). The Kentucky civil rules closely follow the federal rules and actually are cut from the federal cloth (4)27").

■ The need to freely formulate legal theories, discuss the investigation of the case, and speak with victims and witnesses, is most especially true in criminal prosecutions, where prosecutors must constantly be cognizant of the rights of all involved—the defendant, the victim(s), witnesses and the Commonwealth. As recognized by the Supreme Court,

> Although the work-product doctrine most frequently is asserted as a bar to discover [sic] in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital. The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case.

*United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).

■ Of course, even where work product protection applies, the protection is not absolute. CR 26.02(3)(a). When evaluating whether to order disclosure of work product, courts have typically distinguished between primarily factual, non-opinion work product, and opinion work product, also called "core" work product, which includes the "mental impressions, conclusions, opinions, or legal theories of an attorney." *Morrow*, 957 S.W.2d at 724 (quoting CR 26.02(3)(a)); *see also United States ex rel. Yannacopoulos v. General Dynamics*, 231 F.R.D. 378, 382 (N.D.Ill. 2005). "Work product which is primarily factual in nature is not absolutely immune from discovery under the rule. At best, it receives a qualified protection which is overcome if the opposing party shows substantial need of the material and inability to obtain it elsewhere without undue hardship." *Transit Authority of River City v. Vinson*, 703 S.W.2d 482, 486 (Ky.App. 1985); *see also Duffy v. Wilson*, 289 S.W.3d 555, 559 (Ky.2009). While this Court recently described mental impressions as having "complete protection,"

*Duffy,* 289 S.W.3d at 559, an exception to that protection was carved out by this Court in *Morrow:* "We are of the view that the opinion work product sought to be discovered must be directed to the pivotal issue in the subsequent litigation and the need for the material must be compelling." 957 S.W.2d at 726. Following *Upjohn v. United States,* 449 U.S. 383, 401–402, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), this Court recognized that "a far stronger showing of necessity and unavailability by other means ... would be necessary to compel disclosure [of opinion work product]." *Morrow,* 957 S.W.2d at 726.

In *Morrow,* a dentist who had successfully defended a dental malpractice suit filed against him subsequently sued the plaintiff's attorneys for wrongful use of civil proceedings. *Id.* at 723. The dentist sought discovery of the complete litigation file of the plaintiff's attorneys in the prior action, including opinion work product contained in the file. *Id.* This Court held that opinion work product was discoverable because the mental impressions of the attorneys and whether they believed there was a valid claim was the central issue in the wrongful use of civil proceedings claim. *Id.* at 726.

Brightwell argues that because he has likewise shown that the mental impressions and thought processes of Santry in determining whether to bring the tampering charge against him were the pivotal issue in his malicious prosecution case against Scott, he is entitled to her opinion work product in the case. However, the underlying litigation in *Morrow* was a civil action, not a criminal case.

The issue of whether opinion work product of a prosecutor from a criminal case is discoverable is one of first impression in Kentucky. Some states have held that the opinion work product of a prosecutor has absolute immunity from discovery. *Smith*

*v. City of New York,* 49 A.D.3d 400, 854 N.Y.S.2d 44 (N.Y.A.D.2008). In criminal cases, the prosecutor's litigation file necessarily contains more sensitive information than in a civil case—victim and witness statements; personal information of victims and witnesses; anonymous tips; correspondence between the prosecutor and police and witnesses; and otherwise confidential information, like KASPER data. We also recognize that the potential for abuse, vindictiveness, retaliation and harassment is great when seeking discovery of a prosecutor's work product, especially in a case like the one *sub judice* where the prosecutor has successfully prosecuted the party.

 Thus, we adjudge that when discovery is sought of opinion work product of a prosecutor relative to a prior criminal prosecution, there is a heightened standard of compelling need that must be met by the party seeking the discovery. Evaluation of discovery requests for work product should always be on a document-by-document basis. *Brown v. Katz,* 868 N.E.2d 1159, 1166 (Ind.Ct.App.2007). In cases where discovery of a prosecutor's work product is sought, the court should consider, among other things, the sensitivity of the documents; the safety and security of the victims, witnesses, and jurors; and the motives of the person seeking the discovery.

In the instant case, pursuant to the initial agreed discovery order, Santry turned over nearly 5,000 pages of documents to Brightwell, which comprised "all documents provided to it by the Defendant Scott pertaining to the criminal charges initiated against the Plaintiff." The trial court specifically found that Santry "represented that she produced all written communications from Scott that are currently contained in her litigation file." In addition, Santry responded to more than 50

interrogatories propounded by Brightwell, which the trial court even noted in its opinion "exceeded the scope of that allowed in the Court's order of November 30, 2007."[3]

Without making any distinction between factual work product or opinion work product, the trial court subsequently issued a blanket order requiring Santry to produce "all documents generated while the underlying prosecution of Brightwell was pending, which in any manner related to the decision to charge Brightwell with Tampering with Physical Evidence, including but not limited to all reports, memos, correspondence, or notes which were relied upon in making that charge." The court further ordered Santry to appear for deposition by Brightwell. The sole reason cited by Brightwell for his need of further discovery of Santry and her litigation file is that he wanted to refresh her recollection or to otherwise pin down exactly what her recollection was because she stated in her interrogatory responses that she could not recall the specifics of her conversations with Scott. Both the trial court and the Court of Appeals adjudged that was a sufficient showing of "substantial need" and that Brightwell could not "obtain the substantial equivalent by other means."

While the trial court has the "ultimate discretion in discoverability", *Morrow*, 957 S.W.2d at 727, the trial court's evaluation of the discovery request for Santry's opinion work product under the "substantial need" standard for factual, qualified work product was in error in this case. Further, the trial court's order made no mention of any *in camera* review of the material; and there is no indication in the record that such *in camera* inspection was made. Even in *Morrow*, the Court strongly recommended "that pro-

duction of opinion work product should not be ordered without a prior *in camera* inspection by the trial court." 957 S.W.2d at 726.

As for whether Brightwell could compel Santry to appear for a deposition in this case, we note that although attorneys are not immune from being required to give their depositions regarding cases in which they are counsel, the work product privilege would likewise apply to information sought in the deposition. CR 26.02(1); *See State of New Hampshire v. Superior Court*, 116 N.H. 1, 350 A.2d 626, 627 (1976). An attempt to depose a prosecutor calls for special scrutiny because "such depositions inherently constitute an invitation to harass the attorney...." *State v. Anderson*, 79 S.W.3d 420, 438 (Mo.2002) (quoting *State ex rel. Chaney v. Franklin*, 941 S.W.2d 790, 793 (Mo.Ct.App. 1997)). "Further, public policy imperatives for ensuring the effective functioning of the prosecutor's office militate against requiring prosecutors to submit to oral discovery concerning their work product." *Messenger v. Ingham County Prosecutor*, 232 Mich.App. 633, 591 N.W.2d 393, 400 (1998). Even in *Doubleday*, wherein the Court found that the prosecutors' files were not subject to work product privilege in the subsequent civil action, the court was reluctant to allow the prosecutor to be deposed without first examining whether there existed other means to obtain the requested information. 149 F.R.D. at 614. "[D]isclosure of the prosecutorial file is not only a good alternative means, but may be more complete and accurate. The recordations of the criminal investigation may stand the test of time better than the individual attorney's memory of the case." *Id.* So, on remand to the trial court, after

---

**3.** In the opinion, the circuit court admonished Brightwell that any similar disobedience to the Court's orders in the future would result in sanctions.

the court has re-evaluated the discovery request pursuant to this opinion, only as a last resort should the court allow Brightwell to depose Santry on her work product.

Accordingly, we reverse the denial of the Court of Appeals of the petition for writ of prohibition and remand for an order granting the writ. In granting the writ, the Court of Appeals should instruct the circuit court to re-evaluate the request for discovery of Santry's opinion work product under the heightened "compelling need" standard discussed in this opinion and conduct an *in camera* review of the material before permitting discovery of such information.

As for Brightwell's motion to correct the record and dismiss the appeal because Santry no longer works for the Jefferson County Attorney's Office, we see no reason why this development would warrant correction of the record or dismissal of the appeal. Brightwell is presumably still seeking to depose Santry and has not abandoned his request for discovery of the former prosecutor's work product from the Jefferson County Attorney's Office. Accordingly, Brightwell's motion to correct the record and dismiss the appeal is hereby denied.

MINTON, C.J.; CUNNINGHAM, NOBLE, SCHRODER, SCOTT, and VENTERS, JJ., sitting. MINTON, C.J.; CUNNINGHAM, NOBLE, SCOTT, and VENTERS, JJ., concur. SCHRODER, J., concurs in result only by separate opinion. ABRAMSON, J., not sitting.

SCHRODER, J., concurring in result only:

I concur with the result reached by the majority in this case. I depart, however, from the majority's decision pursuant to CR 76.32 to grant rehearing of the previously rendered opinion of this Court. I do not believe the Movant has shown that this Court misconceived or overlooked a fact or the law in its earlier opinion as required by CR 76.32(1)(b). On the contrary, I question the application of the common law work product privilege when Kentucky has a civil rule covering the privilege, see CR 26.02(3), which this Court relied on in the original opinion.