RENDERED:  DECEMBER 17, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

**OPINION OF DECEMBER 10, 2021, WITHDRAWN**

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1134-MR

SHONTAI TUDOR, MOTHER AND
NEXT FRIEND OF J.T., A MINOR                                    APPELLANT


|          | APPEAL FROM JEFFERSON CIRCUIT COURT |
| -------- | ----------------------------------- |
| v.       | HONORABLE AUDRA J. ECKERLE, JUDGE   |
|          | ACTION NO. 17-CI-001177             |


JEFFERSON COUNTY PUBLIC SCHOOLS
A/K/A JEFFERSON COUNTY BOARD OF
EDUCATION; AND BRIAN LOUIS RAHO[1]                              APPELLEES


OPINION
AFFIRMING IN PART,
REVERSING IN PART, AND
REMANDING

** ** ** ** **

---

[1] Although the notice of appeal designates Brian Rahoe as an appellee, the circuit court noted in its judgment that he had informed the court that the proper spelling of his name is "Raho."  Like the circuit court, we will therefore use the latter spelling in this Opinion.

BEFORE:  CALDWELL, MAZE, AND McNEILL, JUDGES.

MAZE, JUDGE:  Shontai Tudor, as mother and next friend of J.T. (Mother), appeals the Jefferson Circuit Court's entry of summary judgment in favor of the Jefferson County Board of Education (JCPS), and its employee, Brian Raho. Because we are convinced there is a genuine issue of material fact concerning Raho's good faith in carrying out his discretionary duties, the summary dismissal of Mother's claims on grounds of qualified official immunity must be reversed. We affirm the circuit court's denial of Mother's motion to compel production of a prosecutorial file and remand the case for further proceedings.

## FACTS

On February 2, 2017, J.T., a senior at Western High School, was involved in a physical altercation with another student, C.L., between classes in a hallway near the office of assistant principal Raho.  Raho happened to be in the hallway talking with a teacher when he noticed what he initially thought was mere horseplay between the students.  Raho's initial impression that the two were engaged in horseplay stemmed from his knowledge that J.T. and C.L. were best friends.  However, rather than acceding to verbal commands to disengage and head to class, the fight intensified to the point where fists were drawn and Raho determined it was necessary to intervene.  In the course of trying to physically separate the two, Raho got in between them and as result sustained several blows

-2-

to his head, face, and body which ultimately required medical attention at Baptist East Hospital for a concussion. After Raho radioed for assistance, other staff intervened and were able to separate the students. J.T. was then placed in Raho's office with a member of Western's security personnel while Raho continued attempting to calm C.L. in the hallway.

It is undisputed that after having been placed in the assistant principal's office, J.T. was determined to continue the fight and stated in his deposition that he wanted to get back out in the hallway to reengage with C.L. Realizing that C.L. was just a few feet away in the hall, J.T. testified that he went back out in the hall to continue the fight "because I was like – I mean, if I'm going to get suspended, I'm going to get suspended for something I really did." Although J.T. stated that it was his intention "to have a real fight," he was met by Western's head of security Mike Rusche and school security officer Eric Withers who took him back into the office and were trying calm him down. However, J.T. remained physically aggressive and, according to Rusche's affidavit, as he and Withers were attempting to get J.T. back into the office, a printer on a rolling cart was toppled. Rusche also stated that they were attempting to get J.T. on the ground "to prevent the very agitated and shouting student from flailing about with his arms and legs."

After hearing a crash, Raho followed school resource officer (SRO) Deputy Sheriff Rhonda Rattler into his office where, according to Deputy Rattler's testimony, J.T. was struggling with the security officers in an attempt to get back out in the hallway. Deputy Rattler also admitted that when she entered the office it appeared as if the security guards needed help. Assistant principal Raho's actions upon entering the office form the basis for this litigation.

It is undisputed that Raho put his foot on J.T.'s buttocks as the child struggled with the two security officers. While Raho describes his actions as a pushing downward to assist the security officers in getting J.T. to lie flat on the floor, Deputy Rattler characterized his actions as repeatedly kicking J.T. Shortly after the assistant principal and two security officers had gotten J.T. under control, officers from the Shively Police Department arrived to assist. In his deposition testimony, Raho stated that he was acting principal at the time and was fearful the situation at the school was spiraling out of control with disruptive behavior being observed by other students. Because he himself was injured, he stated that he felt he needed more support to secure the school and had requested assistance from the Shively Police Department.

After he calmed down, J.T. declined medical attention, telling school personnel "I'm okay, I'll be all right." In his deposition testimony, J.T. stated, "I mean, I was hurting. I mean, it was a tussle, you know. I used all my energy and

-4-

stuff. I'm being thrown to the ground and stuff." Regarding the alleged kicking, J.T. stated, "[b]ut my right leg was a little tender, you know, I had been kicked by a grown man."

After the volatile situation was under control, Deputy Rattler swore in a warrant that the crime of assault in the fourth degree had occurred in her presence naming Raho as the assailant and J.T. as the victim. The assault allegation resulted from what Deputy Rattler perceived as kicking during the attempt to subdue J.T. Although Raho was removed from Western after the filing of the complaint, he returned to the school after the criminal action was dismissed. Further, an investigation of the incident conducted by Western Principal Michael Newman determined that Raho's actions did not constitute a violation of JCPS policy and he was not disciplined for his actions during the incident. Principal Newman did, however, prepare an August 14, 2017 coaching report in which he counseled Raho that use of a foot in such situations should be undertaken only as a last resort:

> Last year, you were involved in a restraint incident where you received a laceration and concussion. In this event, you acted in self-defense and out of the need to maintain order in the building. Both Mr. Rusche and Mr. Withers confirmed this. This event was also witnessed by the SRO assigned to Western at the time. I recognize that this event created a volatile situation and it made using SCM [Safe Crisis Management] difficult; note that using one's foot on a child's behind to keep him down, and others safe, should always be done as a last resort.

Although J.T. was not allowed to return to school, Mother reached an agreement with Principal Newman which allowed J.T. to complete his senior year at home and graduate.

Thereafter, Mother filed this action on J.T.'s behalf alleging that Raho's intentional conduct in kicking J.T. had caused him to suffer "great and irreparable physical, mental and emotional stress, strain, and humiliation, thereby entitling him to compensatory damages[,]" as well as punitive damages. The complaint also alleged that because Raho was acting in the course of his employment with JCPS at the time of the incident, JCPS is also liable for Raho's actions, as well as any damages accessed against him.

After the taking of depositions, both sides moved for summary judgment. Although the circuit court initially denied both motions, upon consideration of JCPS and Raho's motion to alter, amend, or vacate, it ultimately concluded that Raho was entitled to qualified immunity for his discretionary actions and that Mother had failed to prove that Raho had acted in bad faith. This appeal followed.

**STANDARD OF REVIEW**

As an initial matter, we acknowledge our Supreme Court's reiteration of the well-settled rules regarding entry of summary judgment:

> We must first begin by reviewing the standards to be used when handling summary judgment. Summary

judgment is to be "cautiously applied and should not be used as a substitute for trial." Granting a motion for summary judgment is an extraordinary remedy and should only be used "to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." The trial court must review the evidence, not to resolve any issue of fact, but to discover whether a real fact issue exists. This review requires the facts be viewed in the light most favorable to the party opposing summary judgment.

*Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 905 (Ky. 2013) (footnotes omitted). The Supreme Court also emphasized that the term "impossible" is to be used in a practical, not an absolute sense. *Id.* In this case, the facts must be viewed in a light most favorable to Mother. Finally, appellate review of a motion for summary judgment only involves questions of law and "a determination of whether a disputed material issue of fact exists." *Id.* Therefore, our review is *de novo* with no need to defer to the circuit court's decision. *Id.*

With these principles in mind, we turn to an examination of the circuit court judgment.

**ANALYSIS**

Mother raises two arguments to support her contention that the entry of summary judgment must be reversed: 1) that the circuit court erred in concluding that Raho's actions were protected by qualified immunity; and 2) that it erred in refusing to compel the assistant county attorney in Raho's criminal case to

-7-

comply with Mother's subpoena demanding production of her prosecutorial file and to submit to an oral deposition. We commence with a discussion of the nature of qualified immunity.

## I. QUALIFIED IMMUNITY

Generally, qualified official immunity is "immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions." *Patton v. Bickford*, 529 S.W.3d 717, 723 (Ky. 2016) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 521 (Ky. 2001)). "Qualified immunity applies only to the negligent performance of duties that are discretionary in nature." *Id*. at 723-24. In contrast, qualified immunity is not provided for the negligent performance of a ministerial act. *Id*. at 724.

In *Patton*, the Supreme Court of Kentucky explained that a ministerial duty is one that "requires only obedience to the orders of others." *Id*. (quoting *Yanero*, 65 S.W.3d at 522). In other words, a duty is ministerial "when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id*. "The point is that a government official performing a ministerial duty does so without particular concern for his own judgment" or, stated another way, "the act is ministerial 'if the employee has no choice but to do the act.'" *Id*. (quoting *Marson v. Thomason*, 438 S.W.3d 292, 297 (Ky. 2014)).

In contrast, discretionary acts are "good faith judgment calls made in a legally uncertain environment" and involve "personal deliberation, decision, and judgment[.]" *Yanero*, 65 S.W.3d at 522. Particularly pertinent to the issues in this appeal is *Yanero*'s explanation of the proper application of the doctrine of qualified immunity:

> But when sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment. 63C Am.Jur.2d, *Public Officers and Employees*, § 309 (1997). Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, *id.* § 322; (2) in good faith; and (3) within the scope of the employee's authority. *Id.* § 309; Restatement (Second) Torts, *supra*, § 895D cmt. g. An act is not necessarily "discretionary" just because the officer performing it has some discretion with respect to the means or method to be employed.

*Id.* Citing this explanation of the doctrine of qualified official immunity, the circuit court concluded that Raho's actions in attempting to subdue J.T. were "clearly discretionary" as stated in the findings in its prior order denying summary judgment:

> Here, it is undisputed that some rules and protocols regarding student supervision and to protect J.T. from harm existed. However, Defendants possessed considerable leeway in how they conducted their physical interactions with J.T. However, [Mother] has established

-9-

no simple rule, guideline or procedure that Defendants should blindly follow to de-escalate a dangerous and volatile situation. Returning chaos to order is by its very nature a series of actions that require discretion and an ability to make quick decisions in real time. Moreover, [Mother] has not established a black and white rule that educators at the School were required to minister when a child engages in hand-to-hand combat with another child. Instead, J.T. forced Defendants to react by creating an action plan out of whole cloth. They also had to determine whether J.T.'s behavior constituted a danger to himself or others, a decision which is also by its very nature discretionary and not ministerial, as it involves the delicate balance between physical protections of selves (here, Defendants) and another (J.T.) in a rapidly evolving circumstance. Defendants used their judgment to employ words and tones to calm J.T., then to separate him from others, and only thereafter to intervene physically. These acts were the result of the personal deliberation, decision, and judgment that are the hallmarks of a discretionary series of actions.

We find absolutely no error in the circuit court's analysis and concur in its assessment that Raho's actions were "clearly discretionary."

However, as the circuit court correctly noted, once it had determined that Raho's actions were discretionary, the burden shifted to Mother to prove Raho had acted in bad faith. The Supreme Court in *Rowan County v. Sloas* explained that:

no immunity is afforded for the negligent performance or omissions of a ministerial act, or **if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive, i.e., again the "bad faith" element**. [*Yanero*, 65 S.W.3d] at 523. And "[o]nce the officer or employee has shown *prima*

-10-

*facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act [was in bad faith]." *Id.*

201 S.W.3d 469, 475-76 (Ky. 2006) (emphasis added).

Regarding bad faith, the circuit court entered the following findings:

Absent a showing of bad faith, [Raho] is immune from this lawsuit. In this case, it has been established that he was acting within his discretion in working to de-escalate a volatile situation. He placed his foot on J.T.'s backside to control an explosive situation in the school. All credible evidence demonstrates that he was attempting to calm an out of control situation and was not acting to disregard J.T.'s protected rights. J.T. had no protected right to continue to fight physically another classmate and cause risk of harm to himself and others. Raho was not violating any of his rights by working to disengage the violent situation. Further, all criminal charges against him were summarily dismissed. Moreover, despite [Mother]'s argument, there is no evidence of racial injustice, and this argument is based upon mere supposition by counsel for [Mother], but not grounded in any evidence. Finally, Raho had every right to be involved in the situation in his own office (Room 204) and as assistant principal observing the situation unfold, it is only appropriate that he was involved in the de-escalation. As such, and because there is no evidence of bad faith demonstrated by an otherwise qualified immune school assistant principal, the Court will grant summary judgment in favor of Raho.

Unlike the circuit court, we are convinced that a genuine issue of material fact exists as to Raho's good faith in the performance of his discretionary actions, precluding summary judgment. In our opinion, the disputed testimony as

-11-

to whether Raho was merely pushing down on J.T.'s backside (as he contends) or whether Raho repeatedly kicked J.T. (as Mother contends and as Deputy Rattler alleged in her criminal complaint and deposition testimony) presents a clear question of fact which can only be resolved by a jury. In the context of a decision about bad faith, the circuit court additionally focused on a "clearly established right" and opined that the juvenile had no "protected right" to "continue to fight." It is accurate pursuant to *Sloas*, 201 S.W.3d at 476, that there must be a causally related "violation of a constitutional, statutory, or other clearly established right" of the complainant. However, we believe that the "protected right" that is at issue here is not the right of the juvenile to continue to fight. Rather, in this instance, it is the juvenile's right to be free from an assault or other crime that may have been committed against him by school authorities. Given the allegations in this case, therein lies a dispute about bad faith.

We reiterate that trial courts must consider the evidence in a light most favorable to the party opposing the motion for summary judgment. *Sheldon*, *supra*, at 905. And therefore, as previously noted, the facts in this case must be viewed in a light most favorable to Mother, resolving all reasonable doubts in her favor. Despite the significant evidence to the contrary outlined in the circuit court judgment, Deputy Rattler's deposition testimony, as well as her averments in the criminal complaint, is sufficient to avoid summary disposition. On this state of the

record, we cannot conclude that it would be impossible for Mother to prevail at trial.

We are therefore convinced that the circuit court erred in its determination that no disputed material fact existed and that Raho and JCPS were entitled to judgment as a matter of law. The summary judgment in their favor is thus reversed and the case remanded for further proceedings.

## II. DENIAL OF MOTION TO COMPEL

Mother also argues that the circuit court erred in refusing to compel the production of the prosecutorial file of the assistant county attorney assigned to Raho's criminal case and to compel the assistant county attorney to submit to oral deposition. Citing *O'Connell v. Cowan*, 332 S.W.3d 34 (Ky. 2010), the circuit court held that the information sought is privileged under the work product doctrine and that no in camera review was warranted. We agree.

In *O'Connell*, the Kentucky Supreme Court emphasized that trial courts have the "ultimate discretion in discoverability[.]" *Id.* at 44 (citing *Morrow v. Brown, Todd & Heyburn*, 957 S.W.2d 722, 727 (Ky. 1997)). Further, *O'Connell* made clear that "when discovery is sought of opinion work product of a prosecutor relative to a prior criminal prosecution, there is a heightened standard of compelling need that must be met by the party seeking the discovery." *Id*. at 43. In this regard, the trial court is in the best position to judge the "compelling need"

for the work product sought.  We view the "abuse of discretion" standard

applicable to admission of expert testimony under *Daubert*[2] as analogous and

applicable to our review of the circuit court's decision on Mother's motion to

compel:

> The decisions of trial courts as to the admissibility of
> expert witness testimony under *Daubert* are generally
> entitled to deference on appeal because trial courts are in
> the best position to evaluate first hand the proposed
> evidence.  As such, when an appellate court subsequently
> reviews the trial court's *Daubert* ruling, it must apply the
> "abuse of discretion standard."  And as we have noted in
> the past, "[t]he test for abuse of discretion is whether the
> trial judge's decision was arbitrary, unreasonable, unfair,
> or unsupported by sound legal principles."

*Miller v. Eldridge*, 146 S.W.3d 909, 914 (Ky. 2004) (footnote omitted).

In light of the circuit court's findings as to the substantial nature of

evidence concerning the actions in question, we find nothing arbitrary,

unreasonable, unfair, or unsupported by sound legal principles in its conclusion

that Mother failed to demonstrate a compelling need for the prosecutor's "mental

impressions, conclusions, opinions, or legal theories" regarding the dismissal of the

case against assistant principal Raho.  *O'Connell v. Cowan*, 332 S.W.3d at 42.  In

fact, Mother's contentions regarding the circuit court's refusal to order production

of the prosecutorial file are little more than attempts to couch her arguments

---

[2] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

-14-

regarding the nature of Raho's conduct in different terms. Further, given the dismissal at such an early stage of the proceedings, the prosecutorial file likely contained little other than Deputy Rattler's criminal complaint and the prosecutor's mental impressions. In any event, Mother has failed to demonstrate that the circuit court abused its "ultimate discretion" in refusing to compel production or order the prosecutor's deposition.

## CONCLUSION

In sum, the existence of genuine issues of material fact preclude entry of summary judgment in this case. Summary judgment in favor of Raho and JCPS must therefore be reversed and the case remanded for additional proceedings. The circuit court's denial of Mother's motion to compel production of the prosecutorial file and order the prosecutor to submit is oral deposition is affirmed.


ALL CONCUR.


BRIEF FOR APPELLANT:

Aubrey Williams
Louisville, Kentucky

BRIEF FOR APPELLEE:

C. Tyson Gorman
R. Joseph Stennis, Jr.
Louisville, Kentucky